GEORGE COGSWELL *vs.* WILLIAM J. EAMES & others.

After taxes have been duly ascertained and assessed, and lists thereof prepared by the assessor, under U. S. St. 1864, *c.* 173, they become absolutely due from the tax-payers, although such lists have not been committed to the collector or any deputy collector for collection; and if a deputy collector collects within his district taxes so assessed, a list whereof has been so prepared, he and the sureties upon his official bond will be liable therefor, although such list has not been committed to him.

A deputy collector of taxes under the United States internal revenue laws, having collected certain taxes upon a list duly committed to him, and certain other taxes which had been duly ascertained and assessed, and a list thereof prepared by the assessor, though not committed to the deputy collector for collection, and having resigned his office without accounting for any part thereof, thereafter paid to the collector certain money and conveyed to him certain land upon the agreement, which was subsequently reduced to writing, that the same " should be used towards payment of certain liabilities of " the deputy collector " on account of sundry collections of sums of money assessed or to be assessed " under the internal revenue laws; and said agreement further provided that whereas the collector, in consideration of said conveyance, had advanced to the deputy collector a certain sum, " which sum is appropriated towards the payment in part of the sums " so collected, the collector might therefore sell the land so conveyed, and apply the proceeds to reimburse himself for the sum so advanced by him. *Held,* that even if the sureties upon the deputy collector's bond were not liable thereon for his failure to account for taxes collected by him before the list thereof was committed to him, still they could not avail themselves of the above transaction to diminish their liability for the taxes collected by him upon the list which had been duly committed to him.

CONTRACT upon a bond executed by the defendant Eames as principal and the other defendants as sureties, dated September 30th 1862, reciting that the plaintiff had appointed Eames as deputy collector in a district of which the plaintiff was collector of internal revenue, and with condition, among other things, that Eames should truly and faithfully execute and discharge all the duties of deputy collector according to law, and justly and faithfully account for and pay over to the plaintiff, in compliance with the provisions of the acts of congress, and the rules and regulations made under said acts by officers executing the law, all public moneys which might come into his hands or possession, and at the expiration of every month after commencing collections, and at such other times as might be required by the plaintiff, render his accounts of collections and pay over the moneys so collected, and at such other times as might be required by the collector render his accounts of

collections and pay over the moneys so collected. Eames was defaulted, and the sureties defended the action.

It was agreed, in the superior court, that the plaintiff assigned to Eames, after his appointment, a certain portion of his collection district for the collection of the internal revenue therein, and Eames entered upon his duties, and continued to act as deputy collector till March 21st 1865, when he resigned his office. At the time of his resignation, he had collected of taxes duly assessed and levied for the months of January and February 1865, under the internal revenue laws of the United States, and contained and enumerated in two lists of taxes made by the assessor and committed to him for collection, namely, the January monthly list and the February special list for 1865, the sum of $6037.77, which by the condition of his bond he was bound to pay over to the plaintiff, but failed and refused so to do, when demanded by the plaintiff.

Eames also as deputy collector had collected and receipted for the amounts of the taxes duly assessed upon the February monthly and March special lists for that year to sundry persons, thirteen in number, within that portion of said collection district which was assigned to him, amounting in all to $6029.20, which sum he wholly failed to account for and refused to pay over when demanded by the plaintiff; making in all the sum of $12,066.97, collected and received by Eames as above stated.

The several taxes last referred to, amounting to $6029.20, were collected by Eames after the same had been duly assessed to the parties respectively by whom they were paid, and the lists thereof prepared by the assessor, but before the lists had been committed to Eames or any deputy collector for collection. And said lists were never committed to Eames for collection.

After the commencement of this action, the wife of Eames, by a deed in which he joined, conveyed to the plaintiff certain real estate which she held in her own right and to her sole and separate use, and in which he was entitled to tenancy by the curtesy initiate. This conveyance was made upon a verbal agreement, which was subsequently reduced to writing, and

carried out in a written agreement signed by the plaintiff, the material portions of which were as follows:

" This agreement made this seventeenth day of April, A. D. 1865, by and between George Cogswell . . . . and Mary E Eames, wife of William J. Eames, . . . . witnesses, that whereas the said Mary E. Eames and William J. Eames in her right have conveyed to said George Cogswell, by deed dated March 25th, A. D. 1865, a certain real estate in Malden, [which was described] and said estate is subject to a mortgage of five thousand dollars, . . . . and the agreement in relation to said conveyance was that the said estate should be used towards payment of certain liabilities of said William J. Eames, on account of sundry collections of sums of money assessed or to be assessed under the acts of the congress of the United States, providing for raising and collection of the internal revenue of the United States; And whereas said George Cogswell, in consideration of said conveyance, has advanced and paid over to said Eames the sum of $2561.45, which sum is appropriated towards the payment in part of the sums of money so received or collected by said William J. Eames; now therefore it is hereby agreed by and between the parties that the said Cogswell shall hold the aforesaid property and estate for the following purpose, to wit, to sell and dispose of the same whenever a satisfactory price can be obtained therefor at private sale with the consent of said Eames, at any time within six months from said 25th day of March, A. D. 1865; and in case the same shall not have been sold at the expiration of said six months, to be sold at public auction to the highest bidder therefor; the net proceeds from said sale in either mode, to be received by said Cogswell, and by him held and appropriated, 1. to the payment and satisfaction of said mortgage; 2. to reimburse the said Cogswell for the said sum of $2561.45, and interest thereon; 3. to apply the remainder of said proceeds to the payment of the tax of $3067.75 assessed to Geo. H. Sweetser of Saugus on the March special list so called, A. D. 1865, that being the amount received by said Eames from said Sweetser as hereinbefore referred to. And in case there shall remain any portion

of said proceeds after the payment of all sums aforesaid, then the saia remainder shall be applied in liquidation and payment of the remaining liability of said Wm. J. Eames, upon his official bond given to said George Cogswell."

In accordance with the above agreement, and as therein recited, the plaintiff advanced in money $2561.45, which together with $400 in cash furnished by Eames, making in all $2961.45, was, by direction of Eames, with the agreement of the plaintiff, placed in the hands of the plaintiff's attorney to be used in the settlement and payment of certain specified taxes upon the said February monthly and March special lists, namely, twelve of the thirteen taxes upon said lists, which had been collected by Eames as aforesaid.

On the 27th of April 1865, Eames and his wife conveyed tc Geo. F. Choate certain real estate in San Francisco, California, upon an agreement in writing executed the same day, that said Choate should stand seised of the premises in trust, that the same should be sold, and the money raised thereby should be disposed of for and towards the payment and satisfaction of the debt of Eames for and on account of the sum of $3067.75 received by Eames of George H. Sweetser, in advance of the assessment and to pay the internal revenue tax assessed to said Sweetser on the March special list, so called, of 1865, and to pay the said tax of $3067.75 assessed to said Sweetser as aforesaid; and further to indemnify the sureties upon the official bond of Eames. On the 26th of September 1865, said estate having been sold, Mr. Choate paid and applied the net proceeds thereof according to the terms of his agreement, namely, $3067.75 in payment of the tax assessed to Sweetser, and the residue, $2408.90, towards the settlement of the sum of $6037.77 remaining due on account of the January monthly and February special lists.

On the 29th of November 1865, the net proceeds from the sale of the real estate in Malden, being $345.40, was received by the plaintiff and applied in further reduction and payment of the aforesaid sum of $6037.77.

Upon these facts, judgment was rendered for the plaintiff; and the sureties appealed to this court.

*S. B. Ives, Jr.,* for the sureties. When Eames resigned, he was a confessed defaulter to the plaintiff in the sum of $6037.77; and had, as these defendants contend, unlawfully and fraudulently collected $6029.20 from thirteen persons, who by their payment to him had not been discharged from their liability to the government, and from whom the plaintiff might collect the same amounts over again. By an agreement between the plaintiff and Eames, without the knowledge of the sureties, the real estate in Malden and $400 in money were directly appropriated to the payment of the taxes of twelve of these defrauded tax-payers. By a similar agreement between Eames and the plaintiff's counsel, the California estate was appropriated in part to the payment of the tax of the other one of those tax-payers. The actual receipts of the plaintiff, on account of the property of Eames, amounted to $8783.50, which was more than enough to pay his indebtedness to the plaintiff. But the bulk of this sum was appropriated to the payment of the taxes of these thirteen persons, and only the residue to the relief of the sureties on the bond.

Eames was not liable to the plaintiff for the money received by him of these thirteen persons, in advance of the commitment of the list to him.. It was a mere wrongful and fraudulent receipt by him of money which he had no right to receive. The U. S. St. 1864, *c.* 173, § 28, gives no right to the collector or his deputy to demand payment of a tax until after the list has been committed to him by the assessor. Eames either received the money by means of fraudulent representations that the taxes were due and payable, or else he received the same in trust, to pay the taxes when the lists should be committed to him. In either view, his liability was to those who paid him, and not to the plaintiff. Those persons were not discharged from their liability to pay the taxes, by the payment to Eames. The agreed facts show that the plaintiff and Eames both took this view. The money to come from the conveyances was appropriated to pay these taxes.

Under this state of things, the sureties are entitled to the benefit of the payment of money by Eames, and the sum

received for his conveyance to the plaintiff. The obligee in a bond who receives payment or security from the principal obligor is bound to hold it for the benefit of the surety. *Baker* v. *Briggs*, 8 Pick. 129. This principle is applicable to this case. The plaintiff was a stranger to these defrauded tax-payers. The case shows no intervention on their part. The plaintiff, having a large claim against Eames for which he held the defendants as sureties, and being able to secure the whole of it from the principal, attempted, without the knowledge of the sureties, to appropriate it for the benefit of strangers, who had not even requested any assistance. The ordinary doctrine of the appropriation of payments applies only to those cases where the debtor has the right to select from his liabilities, and pay on whatever account he pleases, the creditor being the same in regard to all. See also *Reed* v. *Boardman*, 20 Pick. 446. The money received from the California property stands substantially on the same ground.

*G. F. Choate*, for the plaintiff, as to the appropriation of the money received from the wife's property, cited 1 Story on Eq. § 326; *Bellows* v. *Lovell*, 5 Pick. 310; *Coleraine* v. *Bell*, 9 Met. 503; *Baker* v. *Briggs*, 8 Pick. 129.

BIGELOW, C. J. We can see no reason to doubt that the defendants are liable for the whole sum collected and received for taxes, which had been duly assessed to individuals within the district for which their principal acted as deputy collector, and which he had failed to pay over or account for to the plaintiff after he had collected them. An examination of the various provisions of U. S. St. 1864, *c.* 173, relating to the assessment and collection of taxes, shows that they become absolutely due immediately after they are ascertained and assessed, and lists thereof are prepared under § 20 of the act aforesaid by the assessors. It is the assessment thus finally determined which fixes the liability of the person assessed, and renders him liable presently for the amount of the tax, irrespectively of the transmission of the list of taxes to the collector or deputy collector of the district. The provisions of the statute regulating the delivery of lists to collectors, and requiring notices and demand

of payment, are not intended as conditions precedent to the liability of the tax-payers, but only as prescribing a convenient method of collecting the taxes, and a mode of procedure in order to enforce their payment when they are not voluntarily paid. Although no person could be compelled to pay a tax assessed upon him until after the expiration of the time fixed by the notice of the collector of the district in which he resides, under § 28 of the statute above cited, nevertheless the amount of the tax borne on the list of the assessor would constitute a present debt to the government for which the tax-payer would be absolutely liable. Nor can there be any doubt of the authority of a collector or of his deputy to receive, on behalf of the government, payment of the amount of any tax, as soon as the same should be finally determined and placed on the list by the assessors as before stated. From the very nature of the duties of his office, the collector is the agent of the government to receive taxes duly ascertained and assessed on all persons within his district; and by § 10 the deputy collector is clothed with the same authority as is vested by law in the collector.

The case finds that all moneys received by the principal in the bond declared on were paid to him for taxes in his capacity as deputy collector, by parties to whom they had been duly assessed and whose names were borne on the lists prepared by the assessors. We cannot doubt that the sums thus paid and received operated as a valid discharge of the tax to the persons to whom they were assessed, and that the only remedy of the government to recover the money so paid was against the collector for money received by his deputy *virtute officii.* In this view it is clear that the plaintiff is entitled to judgment for the penalty of the bond, and that execution ought to issue for the entire sum remaining due from the principal for taxes received by him.

This result renders it wholly immaterial to the sureties how the property received by the plaintiff as collateral security for the liability to him of their principal was appropriated. Whether applied to the payment of sums received in payment of the earlier or later assessments, it extinguished *pro tanto* their liability to the plaintiff as sureties on the bond. But if this were

not so, we do not see that the right of the plaintiff to recover of the sureties would in any degree be affected by the transactions by which the plaintiff obtained collateral security of the principal in the bond. It is not a case where certain specific property had been transferred to the plaintiff for the sole purpose of indemnifying him against loss which might accrue from the same causes against which the sureties had also agreed to save him harmless. If such had been the case, the plaintiff could have been held to a strict application of the property to the special purpose for which it was placed in his hands. *Baker* v. *Briggs*, 8 Pick. 129. But, in the case at bar, the property was not transferred to the plaintiff solely for the purpose of indemnifying him against loss by reason of the official acts of his deputy. On the contrary, the transfer was also made for other legitimate objects, and the property was appropriated according to the agreement and understanding of the parties, at the time the transfer was carried into effect. All appears to have been done in good faith, and we fail to see anything in the transaction which injured the sureties or impaired their legal rights.

*Judgment for the plaintiff.*