Righardson, J.,
delivered the opinion of the court:
The facts in this case, concisely stated, are these: In the year 1865 the claimants were owners of 50 bales of cotton, which were seized by the marshal of the middle district of Alabama, upon a warrant duly issued by the district court, on an infor *285 mation filed therein by the district attorney and others, informers for the seizure, confiscation, and condemnation thereof, under the Act August 6,1861, (12 Stat. L., 319, chap. 50,) because the same were used and employed by the owners or with the consent of-the owners in aiding, abetting, and promoting insurrection or resistance to the laws and authority of the United States. While the suit upon the information was pending, the cotton was sold by the marshal, by order of court, for the sum of $4,050, and the net proceeds after deducting expenses were brought into court and paid over to the clerk, amounting to $1,872.50. The clerk having been notified by a circular from the Secretary of the Interior that the First National Bank of Selma, Ala., had been designated by the Secretary of the Treasury as a depositary of public money under the provisions of the Aet June 3,1864, (13 Stat. L., 113, chap. 106, § 45,) deposited the money thus held by him in said bank to his own credit as clerk, pending proceedings in the suit for condemnation,'and to await further orders of court. In 1867 the bank failed, went into involuntary liquidation, a receiver was appointed by the Comptroller of the Currency, and its affairs were wound up by paying a dividend of 35 per cent, to its creditors.
In January, 1871, the suit for condemnation was dismissed on motion of the district attorney, and judgment was entered for the defendants therein for costs. In 1875 the dividend on the clerk’s deposit in the bank, amounting to $641.32, was brought ‘into court by the receiver, paid over to the clerk, and subsequently allowed and paid to the present claimants by order of the court.
All that the claimants received of the money for which the cotton was sold was 35 per cent, of the net proceeds deposited in the bank.
Upon this state of facts the claimants come into this court and seek to charge their loss upon the United States. Without setting forth in their petition the grounds on which it is claimed that the defendants are liable, they pray judgment for the whole amount for which their cotton was sold, less the dividend received by them, with interest thereon from the day of seizure, as though the United States were to be charged with damages for an illegal seizure. But in a supplementary brief, in manuscript, handed to the court since the argument, by the claimants’ attorney, they present their case as an action for *286 money had and received, and rely entirely upon the position which they assume that the First National Bank of Selma, having been designated as a depositary of public money by the Secretary of the Treasury, was part of the Treasury of the United States, aud that the money deposited therein by the clerk of the court was for the time being “public money” in the Treasury of the defendants, which they were bound to keep safely and return to the claimants when their right thereto became established.
This view of the relation of the national banks which are designated depositaries of public money to the United States Government, is, in our opinion, wholly untenable.
National banks are private corporations, organized under a general law of Congress by individual stockholders, with their own capital, for private gain, aud managed by officers, agents, and employés of their own selection. They constitute no part of any branch of the Government of the United States, aud whatever public benefit they contribute to the country in return for grants and privileges conferred upon them by statute is of a general nature, arising from their business relations to the people through individual citizens, and not as direct representatives of the State as a body-politic in exercising its legal and constitutional functions.
The Comptroller of the Currency has certain supervisory powers and duties in relation to national banks, designed to keep the officers within the limits of the law in conducting their legitimate business, and, as far as lies within the province of official supervision by the Government, to protect the creditors and stockholders against fraud, negligence, and mismanagement. But in all contracts the banks act for themselves alone, and have no authority to involve the Government in liability, except the statute liability for the final redemption of their circulating notes. These notes, denominated “ national currency,” and forming to a large extent the circulating money of the country, are the notes of the banks and not of the United States, although in case of insolvency of the corporations they are payable out of the Treasury, and are secured by bonds deposited with the Treasurer, and by a preference in the distribution of the assets of the banks. But the bonds so deposited are héld as a special pledge for the redemption of the circulating notes, and can be held and used by the Government for *287 no other purpose, not even to secure other indebtedness or obligations to the United States. (12 Opin. Attys. Gen., 549.)
By the forty-fifth section of the general' banking-law (13 Stat. L., 113) it was provided :
“ That all associations under this act, when designated for that purpose by the Secretary of the Treasury, shall be deposita-ries of public money, except receipts from customs, under such regulations as may be prescribed by the Secretary; and they may also be employed as financial agents of the Government; and they shall perform all such reasonable duties as deposita-ries of public moneys aud financial agents of the Government as may be required of them. And the Secretary of the Treasury shall require of the associations thus designated satisfactory security, by the deposit of United States bonds and otherwise, for the safe-keeping and prompt payment of the public money deposited with them, and for the faithful performance of their duties as financial agents of the Government.” (Rev. Stat., § 5153.)
Designating a national bank as a depositary of public money under this provision does not change the character of its organization, or convert its managers into public officers, or give to the Government any additional control over the institution, or render the United States liable for any of the acts, contracts, or obligations of the bank. Uor does it constitute the bank a general financial agent of the Government, but when after such designation it is required by law or by direction of the Secretary of the Treasury to perform any financial duties for the United States, it then becomes a special agent for the particular purpose required, with no power to bind the Government beyond the special authority conferred upon it. In short, constituting a national bank a depositary of public money is an employment of the institution for business purposes, as it is employed .by individual depositors, and not an assumption of its powers and liabilities by the National Government, nor the making of it, as an institution, a part of the United States Treasury. Under the provision of the post-office laws, now no longer in force, allowing “all official communications addressed to either of the Executive Departments of the Government by an officer responsible to that Department ” to be sent free through the mail, it was early held, by advice"of the Attorney-General, that the officers of designated'deposita- *288 ries under the general banking law were not officers responsible to the Treasury Department, but were officers of the banks, responsible only to the institutions themselves, and so their •correspondence on official business with the Secretary of the Treasury could not be carried free by mail. (11 Opins. Atty. Gen., 23.)
The United States Treasury proper, as constituted by what is commonly known as the “ Independent Treasury Act,” first passed July 4, 1840, (5 Stat. L., 385,) repealed August 13,1841, and again re-enacted with additional provisions August 6,1846, (9 Stat. L., 59, chap. 90,) is a depository of public money, where the actual money of the Government — gold, silver, bullion, notes, and currency — is kept in kind, as received from the public revenues, or deposited there by express authority of law, and where it remains the specific property of the Government, and cannot be intermingled with other funds, as the Treasurer is not authorized to permit other money to be deposited therein, except in special cases expressly provided for by statute. And the “sub-treasuries,” commonly so called, under the charge of assistant treasurers, where the public money is received and kept under like relations, as well as the mints and perhaps other like places of deposit, may, in a general sense, be considered as part of the United States Treasury. (Rev. Stat., §§ 3591, 3592, 3593, 3594, 3595, &e.)
It is made the duty of the Treasurer, all assistant treasurers and those performing the duties of assistant treasurers, all collectors of customs, all surveyors of the customs, acting as collectors, all receivers of public money of the several land-offices, all postmasters, and all public officers of whatever character, to keep safely any public money intrusted to them, without loaning, using, converting to their own use, depositing in banks, of exchanging the same for other funds than as specially allowed by law, and severe penalties are attached to any breach of such duty. (Rev. Stat., §§ 3639, 6489, &c.)
But when public money is.deposited with a designated-depositary national bank, it is not there retained in kind as the special property of the United States, of which the bank is made the custodian, but it becomes at once the property of the bank, is mingled with its other funds, is loaned or otherwise employed in the ordinary business of the corporation, and the bank, instead of being a custodian of public money, becomes a *289 debtor to the United States precisely as it does to other depositors on receipt of individual deposits. Such was the practical construction adopted immediately on the designation of national banks as depositaries of public money after the passage of the national banking law, and ever since uniformly followed without question. The Government has the same rights and remedies against the bank as other creditors ha ve. If the bank fails, the United States resort to the collateral security, if any, given to secure the deposits of public money to the extent of the jn’oceeds thereof, and if after that is exhausted a balance due for deposits remains unpaid the Government takes its dividend thereon with other creditors, and is entitled to no priority or preference, if the construction given in opinions of the Attorneys-General who have advised the executive officers on that subject be correct, which has not been judicially determined. (12 Opins. Atty. Gen., 549; 13 Opins., 528.)
By section 3G40 of the Revised Statutes it is provided that “the Secretary of Treasury may [except as to money belonging to the postal service] transfer the money in the hands of any depositary of public moneys to the Treasury of the United States to the credit of the Treasurer.”
Thus it is manifest that designated-depositary banks are not made part of the Treasury of the United States proper, rendering the Government liable for the safe-keeping or repayment of the money deposited therein to the credit of the customers of those institutions. As to its own public money intrusted thereto, it relies upon the credit of the corporations and the securities taken as collateral, of which the. one is subject to the vicissitudes of the institutions and the other to the care and vigilance of the public officers. Such money, or the credits therefor, when under the control of the Treasurer of the United States and subject to his draft, may, to that extent and in some sense, be regarded as in the public Treasury, and other Government money deposited there to the credit of other public officers charged with its receipt or expenditure may be considered as public money, although not in the Treasury.
The term “public money,” as used in the statutes of the United States, ordinarily means the money of the Government, received from the public revenues or intrusted to its officers charged -with the duty of receiving, keeping, or disbursing the same wherever it may be. Such money, when illegally obtained there *290 from, may be followed, by the Government into the hands of the wrong-doer and recovered as a debt due from him, with the preference over other creditors in the distribution of his assets in case of insolvency given to the United States by statute. (Bayne et al. v. The United States, 93 U. S. R., p. 642.) It does not include the money of States, counties, cities, and towns, although with reference to those governments and municipalities such funds in other connections would be deemed public money. For does it include money in the hands of the marshals, clerks, and other officers of courts, held by them under authority of law to await the judgment of the court in relation to the ownership thereof. Such money constitutes trust-funds held for individual litigants, and not for the public as represented by the Government — money which cannot be used by anybody until the rightful ownership is determined, and when deposited in any bank is at the risk of the true owner, or of the officer depositing it, according as the latter has .or has not legal authority for substituting the credit of the bank for his own custody thereof. The term is thus used in the act originally establish-ingthe Treasury Department, passed September 2,1789, (1 Stat. L., 65, chap. 12, § 6,) in the acts of July 4, 1840, (5 Stat. L., 385, chap. 41,) and August 6, 1846, (9 Stat. L., 59, chap. 90,) establishing the “ independent Treasury,” in all of the numerous revenue and fiscal acts of Congress found in the Statutes at Large, as well as in the Revised Statutes, where it forms one of the principal divisions of the laws in that volume as the fortieth title. (Rev. Stat., §§ 3591, 3659.)
From the year 1814 to the present time there have been special provisions of law for the deposit and safe-keeping of money paid into the district and circuit courts of the United States different from those applicable to public money. By the Act April 18,1814, (3 Stat. L., 127, chap. 62,) money paid into said courts to abide the order of court was required to be deposited in such incorporated bank as the court should designate, and there remain till it should be decided to whom it of right belonged. If there were no such bank in the district, the court might direct the money to be deposited according to its discretion. By the Act March 3,1817, (3 Stat. L., 395, chap. 108,) all money paid into said courts or received by the officers thereof, in cases pending therein, was required to be deposited in a branch of the United States Bank, if there were one in the dis- *291 tnct, to the credit of the court, and to be drawn only upon the order of the j udge, and if there were no such branch bank in the district, then in some incorporated State bank, and if there were neither in the district, then it was to be deposited according to the discretion of the judge. These acts remained in force, still requiring officers of the courts to deposit in State banks their trust-funds, long after it was made a penal offense for “all public officers of whatever character” to deposit in any bank the public money collected by them, (act of 1846, 5 Stat. L., 60, chap. 90, § 6,) and after the passage of the general banking law of June 3,1864, by which national banks might be made depos-itaries of public money; and they were not repealed until the year 1871. — (17 Stat. L., 2, Ohap. 2, § 6.)
Such was the statute-law, so far as applicable in 1866, when the money now .in question was deposited in the First National Bank of Selma. There being no branch bank of the United States in existence, the clerk was bound by law to deposit the money in an incorporated State bank or otherwise, according to the discretion of the court. He had no right to deposit it anywhere to the credit of the United States Treasurer, nor in the public Treasury to the credit of anybody. It was required to be deposited as a private credit within the exclusive control of the court. In selecting a national bank, the clerk was no doubt acting under the direction and according to the discretion of the court, as he was bound by law to act, influenced, perhaps, by the circular of the Secretary of the Interior, giving notice that the First National Bank of Selma had been designated as a depositary of public money. That circular, however, did not change the legal duties and obligations of the courts or the officers thereof or of the banks named therein, and it created n'o liabilities whatever on the part of the United States.
The clerk did not attempt to place the money in the United States Treasury. He intrusted the funds in his custody to the safe-keeping of the bank, and took the obligation of that corporation and not of the Government. The bank became his 'debtor, and the United States were neither creditors of the bank nor debtors to the depositor on account thereof. The Government not only did not receive the money, but could not have recovered it by action, nor have obtained possession of it by any process.
It will be noticed that the facts proved do not show and the *292 petition does not allege that the Secretary of the Treasury had taken any security from the bank for this deposit or for the deposit of any public money therein, and that it does not appear that he was ever notified or ever knew of this deposit having been made by the clerk of the court.
Under all these circumstances, nothing can be more clear than that the defendants are not liable in an action for money had and received, or in any other form, for the safe-keeping and return of money not belonging to the United States nor intrusted to any of their officers, but deposited by the clerk of the court-in the First National Bank of Selma in his own name and to his own credit.
Since the rights and liabilities of the parties in -thist case, arising from the transactions set forth in the findings, were fixed, Congress has made new and different provisions, by the act of March 24,1871, in relation to moneys paid into the courts of the United States, expressly repealing the acts of 1814 and 1817, above referred to, (Rev. Stat., §§ 798, 995, 998, 5504, 5505,) but not repealing the provisions in relation to money in the hands of assignees in bankruptcy. (Rev. Stat-., § 5059; 14 Opins. Atty. Gen., 362.)
By the law now in force all money paid into any court of the United States, or received by the officers thereof in any cause pending or adjudicated therein, must forthwith be deposited with the Treasurer, an assistant treasurer, or a designated depositary of the United States, in the name and to the credit of the court, unless'it is delivered upon security according to the agreement of parties, under the discretion of the court, as it may be by virtue of a proviso in the act of 1871, re-enacted in Revised Statutes, section 995. When such money is deposited with the Treasurer or an assistant treasurer, where it is mingled with the public money, it is undoubtedly intrusted to the custody of the Government, buc when deposited in a bank, though a designated depositary, it would still seem to be the private deposit of trust-funds for the security of which the credit of the bank and not of the Government is taken.
Whether or not the proceeds or securities taken for the protection of public money simply can be applied to the repayment of deposits to the credit of the courts, either rata with the debts due to the Govern ment or after the payment of such debts, to the extent of any balance of the proceeds remaining, in case *293 of the failure of a depositary bank owing both classes of deposits, or whether the Secretary of the Treasury may now legally and properly require of designated depositaries securities sufficient to protect the court-funds as well as public money and so ■expressly pledged, or whether it is not rather within the power of the litigants interested and the discretion of the courts themselves.either to require security for such deposits under the proviso above referred to or to intrust them wholly to the credit of the corporations, are questions for consideration elsewhere and not here, and we express no opinion thereon.
The judgment of the court is that the petition be dismissed.