DOWNEY, RECEIVER *v.* MAYR, SECRETARY OF STATE.

[No. 14,474. Filed October 27, 1932.]

*Earl R. Conder,* for appellant.

*James M. Ogden,* Attorney-General, and *Joseph W. Hutchinson,* Deputy Attorney-General, for appellee.

KIME, P. J.—This action arose by reason of the filing of an intervening petition by Frank Mayr Jr., the Secretary of State of Indiana, with leave of court, in Cause No. 45291 pending in the Marion Circuit Court and entitled "State of Indiana on the relation of Luther F. Symons, Bank Commissioner of the State of Indiana, v. Washington Bank and Trust Company, wherein the said Mayr, intervening petitioner, alleged the deposit of certain moneys in the sum of $7,565.00 with Washington Bank and Trust Company by his predecessor, Otto G. Fifield, Secretary of State of Indiana, to be held as trust deposits by the trust department of said bank, pursuant to a certain letter dated October 6, 1930, addressed to Indiana Bureau of Motor Vehicles, and signed by Francis W. Payne, Vice-President; the subsequent insolvency of said bank and trust company; the transfer to the said Mayr by the said Fifield of all rights which he (Fifield) might have "under and in accordance with that certain instrument signed Francis W. Payne, Vice-President of Washington Bank and Trust Company, dated October 6, 1930, in consideration of Frank Mayr's duties as Secretary of State"; praying that said claim be allowed for $7,565.00 as a preferred claim, and that said receiver be ordered and directed to pay over to said

intervenor the full sum of $7,565.00 out of moneys in his hands.

The issues arose upon the intervening petition of appellee and the answer of the appellant in two paragraphs to said intervening petition. The first of the paragraphs of answer was a general denial of the allegations of the petition, and the second paragraph was a special answer.

In order to fully understand the issues raised by these two paragraphs of answer we will set out some of the allegations of the intervening petition. Said intervening petition alleged in substance that on and prior to October 4, 1930, there was paid to appellee's predecessor in office by persons desiring motor vehicle licenses for the calendar year 1931 the aggregate sum of $2,200.00, which, on October 4, Otto G. Fifield, then Secretary of State, as Secretary of State, delivered to the Washington Bank and Trust Company to be held by it pursuant to agreement as a trust fund.

Said petition further alleged that the agreement was afterwards reduced to writing and evidenced by a letter addressed to Indiana Bureau of Motor Vehicles, as follows (omitting formal parts) :

"Relative to our conversation of recent date covering the deposit of funds by your department in the trust department of the Washington Bank and Trust Company to be held as trust deposits, for the specific purpose for which they are intended and not to occupy the same position as the general deposits, you are hereby advised that such deposits will be accepted by us and held subject to withdrawal by your department on the signature of Mr. Otto G. Fifield, Secretary of State of Indiana, and in accepting these funds it is understood that these funds shall be subject to withdrawal by said party, who shall sign this letter for the purpose of signature identification.

"Proper receipts will be given for the total of deposits made as the same are made, but no individual record of receipts will be kept."

This document was signed by Francis W. Payne, Vice-President of Washington Bank and Trust Company.

The intervening petition further alleges that additional sums were deposited with Washington Bank and Trust Company by Otto G. Fifield, as Secretary of State of Indiana, up to and including October 24, 1930, and that the total of all funds thus deposited amounted to $7,565.00.

The intervening petition further alleges that all of the above sums were paid to the Secretary of State as such by persons desiring automobile registration and license plates for the year 1931, and that with each separate check or currency in payment for said license fees was an application for a license properly executed.

The first paragraph of answer was a general denial of the allegations of this petition, and the second paragraph was a special answer in which it was alleged, in substance, that said moneys were not received by Otto G. Fifield as Secretary of State, and that said moneys so deposited with the Washington Bank and Trust Company were not held by said Fifield as Secretary of State of Indiana, and that the assignment of said Secretary of State's interest in said funds to the appellee, as alleged in the petition, was not a legal assignment of said moneys to the appellee as Secretary of State.

There was thus raised an issue of fact as well as issues of law, the appellee claiming that under the facts the deposit of said moneys constituted a trust fund and a special deposit which entitled the appellee to a preference, and further that said funds were state funds, and, because of their character as state funds, that the appellee was entitled to have his claim allowed as a preferred claim.

The legal questions presented by the pleadings were: (1) Was the intervening petitioner the real party in interest and entitled to prosecute the action? (2) Was the

deposit of the moneys a general or special deposit? (3) Was the intervening petitioner entitled to preference over general creditors in the payment of his alleged claim?

The issues were decided in favor of the intervening petitioner. The error assigned is the overruling of the receiver's motion for a new trial, which alleged as the reasons therefor: (1) That the decision of the court is not sustained by sufficient evidence; (2) that the decision of the court is contrary to law.

Both parties are agreed that, reduced to a final analysis, two points, and two only, are presented by appellant in support of his propositions that the decision of the court is contrary to law and that the decision of the court is not sustained by sufficient evidence. They are: (a) That the intervening petitioner, appellee herein, is not the real party in interest, and (b) that if it be conceded that the funds whose status is in controversy are public funds, there is, nevertheless, no right to a preference.

The principal contention of appellant is that the appellee is not the real party in interest in that he has no interest in the controversy and therefore not entitled to prosecute the intervening petition. First, because no record of the receipt of these fees were made in the books of the Secretary of State, nor were the fees deposited daily with the State Treasurer. Second, because the Depository Act requires interest to be paid on state funds, while it was specifically contracted that none was to be paid here. And, therefore, Fifield, Secretary of State, was only a bailee until the licenses were actually issued.

The appellant further contends that if these are public funds there is no right of preference over other funds held by him as receiver.

The appellee contends that these moneys came into

his predecessor's hands as Secretary of State, that they are state funds, and that, by virtue of the special contract, they constituted a trust fund in the hands of the bank.

Sec. 10085 Burns' Ann. Stat. 1926, Acts 1925, p. 570, provides that before any motor vehicle shall be operated the owner shall file in the office of the Secretary of State a verified application for the registration of such vehicle.

Sec. 10086 provides that upon receipt of such application the Secretary of State shall file such application and shall register such motor vehicle.

Sec. 10091 provides that fees, scheduled, shall be paid the Secretary of State upon registration or reregistration.

Sec. 10089 provides that all registrations shall be made for the calendar year and shall expire on December 31.

From the above, it clearly appears that the act contemplated that licenses should be issued before January 1 of each year if the owner expected to operate his car on and after that date.

Merely because a Secretary of State does not do his duty and issue licenses so that operators of motor vehicles will not be violating the law is no reason why moneys received by him as such officer are not public funds.

Another section of the statute is applicable here. Sec. 12611 Burns Ann. Stat. 1926, Acts 1907, p. 391, provides that: "It shall be the duty of every public officer in this state, who receives or disburses public funds, to keep a cash-book wherein there shall be daily entered, by item, all receipts of public funds, which cash-book shall be daily balanced, showing funds on hand at the close of each day: Provided, Said cash-book shall be a public record and open to public inspection."

Fifield, as Secretary of State, did not do this and appellant says that, because the officer did not do his duty and follow the statute, these moneys did not become public funds.

We believe such reasoning is fallacious. He received these moneys by virtue of his office of Secretary of State. They were paid to the Secretary of State, not to Fifield as an individual, for a specific purpose. He received them as Secretary of State and merely because his office was not equipped to issue the licenses at that time is no reason for saying they did not become public funds. It was a part of the general fund of the state by specific statute. Sec. 12587 Burns Ann. Stat. 1926, Acts 1925, p. 69, provides that, in addition to certain funds as now provided, "the general fund of the state shall consist of . . . Third. All license and other fees, taxes and money collected by the secretary of state under and pursuant to law."

The appellant says that these particular fees were not collected pursuant to law until the license was actually issued. But the statute says that the Secretary of State, upon receipt of such application, *shall* file same and *shall* register such motor vehicle. When? Upon receipt of application. If the Secretary of State did not wish to officially receive these moneys, he could and should have returned them to the applicants, but this he did not do. He received them as Secretary of State and because he did not do his duty after he received them is no reason for saying they were not state funds.

If appellant's contention that the fees were not collected pursuant to law until the license was actually issued is carried to its logical conclusion, we find a most absurd result. Suppose the Secretary of State receives the application and money and pays the money over to the Treasurer of State the same day, as he should do under the law (Sec. 10090 Burns Ann. Stat. 1926), but

does not issue the license for several days thereafter. Then, under appellant's theory, this money would not be state funds.

Our own statutes provide the best and only guide we have been able to find in Indiana. Sec. 2467 Burns Ann. Stat. 1926, Acts 1905, p. 584, is as follows: "Whoever, being charged or *in any manner intrusted with the collection, receipt, safekeeping, transfer* or disbursement of any *money, funds,* . . . belonging to or *under the control of* the state or of *any state officer* . . . converts to his own use . . . *or deposits with any* person or *corporation,* contrary to law, . . . is guilty of, etc." (Our italics.) Certainly the officer here was intrusted with the receipt and safekeeping of money or funds under his control. He did not convert them to his own use but kept them under his own control until such time as license plates were ready for issue. It then logically follows that these were public funds or public moneys.

The term "public money" as used in the statutes of the United States has been construed to mean *money* of the government *received* from the public revenues or *intrusted to its officers* charged with the duty of receiving, keeping, or disbursing it. *Branch* v. *United States* (1876), 12 Ct. Cl. 281.

Merely because no person could be compelled to procure a license before the first day of January it does not follow that the Secretary of State could not accept applications and fees which had already been determined. The Secretary of State had ample authority to receive these fees (as he did) at the time he did. From the very nature of his duties in the execution of this law it was his duty to receive these moneys at the time they were tendered. See *Cogswell* v. *Eames et al.* (1867), 96 Mass. 48; also, *Johnson* v. *Goodridge* (1838), 3 Shepley (Me.) 29.

Our holding is that these funds came into the offi-

cer's hands by virtue of his office, that they are public or state funds, that the officer is liable for their safekeeping, and that a successor to that office should pursue those funds, and that Frank Mayr Jr., Secretary of State, is the real party in interest.

We are next confronted with the question of whether or not these are trust funds. The special agreement shown heretofore is clear, plain, and explicit. A mere reading leaves no doubt that this was considered by both parties as a trust. It was an express trust, and we so hold. That was their contract, and courts cannot rewrite contracts.

Our holding is based entirely on the theory of an express trust, and we offer no opinion on the theory of there being a preference by reason of these being state funds.

The funds were traced to where the funds of the bank were augmented and proven that there were cash assets on hand of $125,407.96, more than enough to pay this claim; that there was always, from the date of the first deposit to the date of the last, more than enough cash assets to pay this claim. *Terre Haute Trust Co.* v. *Scott* (1932), 94 Ind. App. 461, 181 N. E. 369.

The judgment of the Marion Circuit Court is in all things affirmed, and it is so ordered.