**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 12, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARGARITA SALCEDO-HART,

Plaintiff - Appellant,

v.

DAVID BURNINGHAM; CHRIS B.
TURNER; ASSET PROTECTION
LEGAL GROUP, LLP; ASSET
PROTECTION LEGAL GROUP, LLC;
JAY W. MITTON,

Defendants - Appellees.

No. 15-4099
(D.C. No. 2:13-CV-01071-DB)
D. Utah

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **MURPHY**, and **BACHARACH**, Circuit Judges.

## I. INTRODUCTION

This appeal arises from a suit Margarita Salcedo-Hart brought against Jay

Mitton, David Burningham, Chris Turner, Asset Protection Legal Group, LLP,

and Asset Protection Legal Group, LLC (hereinafter referred to collectively as

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

"APLG"). APLG performed estate planning and "asset protection" work on behalf of Salcedo-Hart's late husband, Cecil Hart. Salcedo-Hart alleged in her complaint that malpractice and/or breach of contract on the part of APLG caused her to incur legal fees and to expend funds in order to settle probate claims brought against her by her stepsons, Don Hart and Tom Hart. The district court granted summary judgment in favor of APLG, concluding a pre-mortem agreement Salcedo-Hart entered into with Don and Tom regarding the disposition of Cecil's property upon his death was valid and binding. That agreement, according to the district court, superseded any negligence on the part of APLG. Salcedo-Hart appeals, asserting (1) the pre-mortem agreement is invalid under Colorado law and (2) the existence of disputes of material fact precludes summary judgment. We conclude the pre-mortem agreement entered into by Salcedo Hart, Don, and Tom is legally enforceable under Colorado law and Salcedo-Hart waived any argument about the existence of disputes of material fact by failing to raise the argument before the district court. Thus, exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms**.

## II. BACKGROUND

### A. Factual Background

In 1997, Cecil and Salcedo-Hart traveled from Colorado to Utah to discuss estate planning and "asset protection" with APLG; Cecil retained APLG at that meeting. Cecil received from APLG estate planning and business documents for execution and a memorandum of instruction discussing the documents. The documents included a form entitled Designation of Successor in Interest. Cecil executed several of the documents, including the following: (1) Last Will and Testament of Cecil E. Hart ("Will"); (2) Cecil E. Hart Trust ("Trust"); (3) Limited Partnership Agreements of the Cecil E. Hart First, Second, Third, Fourth, Fifth, and Sixth Family Limited Partnerships ("FLPs"); (4) a Certificate of Limited Partnership for each FLP; and (5) three Designation of Successor in Interest documents, which designated Salcedo-Hart as successor in interest in each of the Fourth, Fifth, and Sixth FLPs. Thereafter, Cecil executed three additional Designation of Successor in Interest documents, which designated Salcedo-Hart as successor in interest in the First, Second, and Third FLPs.

Between 1998 and his death in 2010, Cecil made few changes to his estate planning documents. He amended ownership percentages in his Fifth FLP, made Salcedo-Hart General Partner of each of the FLPs, and appointed Salcedo-Hart as his agent. Meanwhile, without Cecil's knowledge, his son Don drafted a document titled "Legal and Binding Agreement" (the "Agreement"). Don, Tom,

and Salcedo-Hart signed the Agreement on January 6, 2007. The Agreement purported to govern the management of, and distribution of profits from, "the properties and businesses owned by" Cecil at the time of his death going forward until Salcedo-Hart's death. It also purported to govern the distribution of those assets upon Salcedo-Hart's death.

Salcedo-Hart's suit against APLG flows from apparent inconsistencies in the documents identified above. Section 1.40 in each of the six FLP agreements gave Cecil the unrestricted right to designate his successor in interest. Consistent with this provision, Cecil designated Salcedo-Hart as his successor in interest in all six FLPs. It is uncontested that Cecil intended that each FLP effectuate a non-testamentary and non-probate transfer of his interests upon his death, exactly as had been recommended by APLG. APLG failed, however, to insure that the other relevant documents conformed with the content of the FLP agreements. Most notably, Schedule "A" of the Trust purported to "sell, transfer, convey, quitclaim and assign," all of Cecil's rights, title, and interests in the six FLPs to the Trust itself. Whereas the successor in interest documents would have transferred Cecil's FLP interests entirely to Salcedo-Hart, the Trust appeared to grant three equal shares of its assets, including Cecil's interests in the six FLPs, to Salcedo-Hart and her stepsons.

Cecil died in 2010, leaving a substantial estate consisting of real property and other assets. Acting as Personal Representative pursuant to the terms of the

-4-

Will and the Trust, Salcedo-Hart filed a Colorado state court probate action. Don and Tom brought claims in the probate action, asserting that all of Cecil's assets were held in the Trust and that Salcedo-Hart, Don, and Tom each were to receive one-third of the Trust assets. Cecil's assets had a total value of approximately $7.3 million, of which approximately $2.5 million were held in the Trust and approximately $4.8 million were held in the FLPs. Salcedo-Hart argued that the FLP agreements and the six Designation of Successor in Interest documents represented the correct manifestations of Cecil's intent. That is, she argued she was entitled to all of Cecil's interests in the six FLPs and also to one-third of the assets in the Trust. As part of a settlement of the matter, Salcedo-Hart transferred to Don and Tom property worth approximately $805,000 over and above what she asserted Cecil intended them to receive. She also incurred extensive attorneys fees and other legal expenses in opposing their claims and ultimately settling with them.

**B. Procedural Background**

Salcedo-Hart brought the instant action in the United States District Court for the District of Utah, alleging malpractice and breach of contract on the part of APLG. APLG filed a motion for summary judgment. APLG asserted that even assuming the existence of malpractice and/or breach of contract, Salcedo-Hart suffered no damages because she subsequently entered into the Agreement. Specifically, APLG asserted the Agreement was a superseding act that broke the

causal chain, thereby precluding Salcedo-Hart's ability to prove any damages flowing from the actions of APLG.

Salcedo-Hart opposed APLG's motion for summary judgment on the sole basis that the Agreement was invalid and unenforceable as a matter of Colorado law and, therefore, did not break the causal link. At no point did Salcedo-Hart argue or allege that an extant dispute of material fact regarding the status of the assets in Cecil's estate precluded summary judgment. Furthermore, she did not provide any affidavits, declarations, or other evidence tending to demonstrate the existence of a material factual dispute.

The district court heard oral argument on APLG's motion for summary judgment. At that hearing, the parties agreed the sole issue was whether Colorado's probate code prohibited the Agreement.[1] Nevertheless, the district court queried APLG's counsel about the status of property in Cecil's estate at the time of Cecil's death, apparently wondering if Salcedo-Hart could have defended against summary judgment by asserting there was no property owned by Cecil at

---

[1]During the hearing, Salcedo-Hart's counsel made the following statements: (1) "[R]arely in my practice do I come across an issue where there really are no factual disputes, and I think this is one of the few that, at least for the purposes of this motion, there really are only four facts."; (2) "Your Honor, I think what this really boils down to is just what we're talking about. We put in a number of issues, causation, damages, waiver, estoppel, all of that, but I think both sides, as I reread the memorandum today, I think we're on the same page, and this case turns on whether that contract is valid and enforceable or, as the plaintiff submits, that it is invalid and unenforceable."; and (3) "I think it all boils down to, as the Court has noted, this legal and binding agreement and whether it is legal and binding."

-6-

the time of his death upon which the Agreement could operate. APLG's counsel noted that the district court had raised a "great question," but that Salcedo-Hart (1) had not defended APLG's summary judgment motion on that basis, and (2) there was no evidence in the record relating to that question. When the district court asked Salcedo-Hart's counsel the same line of questions, counsel simply stated that he thought Salcedo-Hart still suffered damages even if the Agreement was valid. Salcedo-Hart's counsel did not, however, point to any record evidence supporting this assertion, ask for a continuance to build any necessary record, or ask the district court to resolve the case on any basis other than the purely legal dispute set out in the parties' summary judgment filings.

The district court granted APLG's motion for summary judgment, concluding the pre-mortem agreement entered into by Salcedo-Hart, Don, and Tom was enforceable under Colorado law. The district court did not address the question of whether potential factual disputes existed as to the status of Cecil's property upon his death or whether the existence of such disputed facts would bear on the causation argument set out in APLG's motion for summary judgment.

## III. ANALYSIS

### A. Validity of the Agreement

#### 1. Standard of Review

This court reviews the district court's grant of summary judgment in favor of APLG de novo, applying the same standard applied by the district court. *McBride v. Peak Wellness Ctr., Inc.*, 688 F.3d 698, 703 (10th Cir. 2012). The validity of the Agreement involves an interpretation of Colorado law. This court reviews a district court's determination of state law de novo. *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 850 (10th Cir. 2015).

#### 2. Discussion

Salcedo-Hart asserts the Agreement is invalid as a matter of Colorado law. In so arguing, she relies on Colo. Rev. Stat. § 15-12-912. Section 15-12-912, which addresses post-mortem agreements among those entitled to inherit under a will or the laws of intestate succession (i.e., "successors"), provides as follows:

> Subject to the rights of creditors, competent successors may agree among themselves to alter the interests, shares, or amounts to which they are entitled under the will of the decedent or under the laws of intestacy in any way that they provide in a written agreement, whether or not supported by a consideration, executed by all who are affected by its provisions. The personal representative shall abide by the terms of the agreement subject to his or her obligation to administer the estate for the benefit of creditors, to pay all taxes and costs of administration, and to carry out the responsibilities of his or her office for the benefit of any successors of the decedent who are not parties. Personal representatives of decedents' estates are not required to see to the performance of trusts if the trustee thereof is another person who is willing to accept the trust. Accordingly,

-8-

> trustees of a testamentary trust are successors for the purposes of this section. Nothing in this section relieves trustees of any duties owed to beneficiaries of trusts.

Salcedo-Hart argues that this provision, along with various definitional provisions of the Colorado Probate Code, implicitly preclude successors from entering into any type of agreement regarding their interest in an estate except for the post-mortem agreement specifically authorized in § 15-12-912. Salcedo-Hart's appellate arguments are unconvincing.

Simply put, Salcedo-Hart urges this court to adopt the following negative inference: because the Colorado Probate Code specifically allows successors to enter into post-mortem contracts regarding their rights to distribution from a decedent's estate, pre-mortem anticipated successors cannot enter into binding contracts among themselves as to a potential post-mortem distribution. Such a conclusion is not warranted under Colorado law. Section 15-12-912 does not speak to the validity of pre-mortem contracts among potential successors and the rule Salcedo-Hart advocates is at odds with important principles of contract law.

It is important to first note that Salcedo-Hart has not identified even a single case, either from Colorado or any other jurisdiction, to support her position as to the validity of pre-mortem agreements. Instead, cases addressing the issue uniformly favor the validity of pre-mortem settlements. *See, e.g.*, *Machen v. Machen*, 385 S.W.3d 278, 282 (Ark. 2011) ("Family-settlement agreements are favorites of the law. Courts of equity have uniformly upheld and sustained family

arrangements in reference to property . . . . The motive in such cases is to preserve the peace and harmony of families." (citations omitted)); *Rector v. Tatham*, 196 P.3d 364, 368 (Kan. 2008) ("We have found no cases disallowing an assignment of an expectancy interest from one heir to another."). These cases are entirely consistent with the general notion of freedom of contract. *See Balt. & Ohio Sw. Ry. Co. v. Voigt*, 176 U.S. 498, 505 (1900) ("[T]he right of private contract is no small part of the liberty of the citizen, and . . . the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation . . . ."); *Fox v. I-10, Ltd.*, 957 P.2d 1018, 1022 (Colo. 1998) ("Where a party enters into a contract absent fraud, duress or incapacity, the courts will not relieve that party of the consequences of the bargain simply because it may have been improvident.").

In response to all this, Salcedo-Hart states that the Agreement violates public policy because it interferes with Cecil's testamentary intent. There are several problems with Salcedo-Hart's argument in this regard. The Colorado Legislature adopted § 15-12-912 from the provisions of the Uniform Probate Code. *Compare* Colo Rev. Stat. § 15-12-912 *with* Unif. Probate Code § 3-912. The commentary to Uniform Probate Code § 3-912 provides as follows:

> It may be asserted that this section is only a restatement of the obvious and should be omitted. Its purpose, however, is to make it clear that the successors to an estate have residual control over the way it is to be distributed. Hence, they may compel a personal

representative to administer and distribute as they may agree and direct. . . .

This commentary demonstrates the provision of the Uniform Probate Code from which § 15-12-912 was drawn is not meant to relate to the preservation of a testator's intent. Instead, the statute reinforces that it is the successors' interests that are paramount and that those successors can distribute their interests how they see fit without being thwarted by the personal representative. Furthermore, agreements like the one at issue here do not interfere with a testator's intent. That is, although successors may enter into a pre-mortem agreement prior to a testator's death, the distribution of the assets the successors receive under the relevant estate documents does not occur until after the testator's death. It is only after a testator's assets are distributed that successors can then transfer those assets and, at that point, the successors are bound by the provisions of any relevant post-mortem agreement into which they enter. Finally, Salcedo-Hart has not identified how pre-mortem agreements do any more damage to a testator's intent than do post-mortem agreements. In any event, "[a]s a general rule, the members of a family of a testator, one or more of whom are beneficiaries under his will, may agree upon a distribution of their gifts in any manner they may desire, even though the agreement results in a division of the estate in a manner quite different from that prescribed in the will." *Family Settlement of Testator's Estate*, 29 A.L.R.3d § 2[a] (1970).

Upon careful review of the relevant authorities, this court concludes that Colorado courts would agree with the apparently unanimous view that pre-mortem agreements are valid and enforceable contracts. For that reason, and because Salcedo-Hart has failed to identify any authority supporting the contention § 15-12-912 was designed to protect a testator's intent, we decline to read into § 15-12-912 an intent by the Colorado legislature to bar all other types of family settlement agreements but for the one described therein. Thus, the district court correctly concluded the Agreement between Salcedo-Hart, Don, and Tom was valid and enforceable.

## B. Existence of Material Factual Disputes

Salcedo-Hart asserts the district court identified disputed issues of material fact when it sua sponte initiated a discussion at the summary judgment hearing about what property was in Cecil's estate at his death and what the property was worth. She takes this position even though her counsel did not ask the district court to resolve the case on any basis other than the purely legal question whether the Agreement was valid under Colorado law, did not point to any record evidence creating such a material factual dispute in response to the district court's questions, and did not ask for a continuance to build any necessary record.

To preserve an issue for appellate review, a party must raise the issue in district court and seek a ruling. *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1150 (10th Cir. 2012). "[W]hen a litigant fails to raise an issue below

in a timely fashion and the court below does not address the merits of the issue, the litigant has not preserved the issue for appellate review." *FDIC v. Noel*, 177 F.3d 911, 915 (10th Cir. 1999). "[T]o preserve the integrity of the appellate structure, [this court] should not be considered a second shot forum . . . where secondary, back-up theories may be mounted for the first time." *Tele-Commc'ns, Inc. v. Comm'r*, 104 F.3d 1229, 1233 (10th Cir. 1997) (quotation omitted). Nevertheless, when a district court resolves an issue of law on the merits, a party may challenge that ruling on appeal even if she failed to raise the issue in district court. *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1328 (10th Cir. 2003).

Salcedo-Hart asserts that the preservation exception set out in *Hernandez-Rodriguez* was satisfied by the district court's brief questions as to the status of Cecil's estate. *Hernandez-Rodriguez* does not support Salcedo-Hart's preservation argument. Unlike in *Hernandez-Rodriguez*, *id.*, the district court here did not rule on the issue Salcedo-Hart seeks to raise on appeal. The discussion at the summary judgment hearing identified by Salcedo-Hart amounts to nothing more than mere musings by the district court about issues that could have been, but were not, raised in the case. Mere musings, hypotheticals, or rhetorical flourishes on the part of the district court, standing alone, are clearly insufficient to preserve an issue for appellate review. *United States v. Martins*, 413 F.3d 139, 153 (1st Cir. 2005) (holding that a district court's "rumination"

-13-

about a matter not presented by the parties that "formed no part of the [district] court's rulings" did not preserve issue for appellate review). We firmly and unequivocally reject Salcedo-Hart's assertion that this court should treat the district court's grant of summary judgment in favor of APLG as an *implicit* ruling on the merits. Such an approach, which is not supported by a single citation to authority, would convert the narrow exception set out in *Hernandez-Rodriguez* into a routine and unmanageable exception to the long-standing and well-understood rules on preservation.

Because Salcedo-Hart did not preserve the appellate arguments she makes on appeal about the existence of genuine disputes of material fact, the issue is forfeited. This court "will reverse a district court's judgment on the basis of a forfeited theory only if failing to do so would entrench a plainly erroneous result." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). Salcedo-Hart does not, however, argue she is entitled to relief under the onerous plain-error standard. "[T]he failure to argue for plain error and its application on appeal . . . marks the end of the road for an argument for reversal not first presented to the district court." *Id.* at 1131.

## IV. CONCLUSION

For those reasons set out above, the United States District Court for the District of Utah is hereby **AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge