

**FILED**

Aug 25 2017, 8:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS/
CROSS-APPELLEES

Darla S. Brown
Sturgeon & Brown, PC
Bloomington, Indiana

ATTORNEY FOR APPELLEE/
CROSS-APPELLANT

Robert M. Hamlett
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Supervised Estate of Gary D. Kent, Deceased; and | August 25, 2017 |
| In the Matter of the Educational Trust of the Grandchildren of Gary D. Kent; | Court of Appeals Case No. 55A01-1612-ES-2907 |
| John David Kent, Kevin Kent, Jacob Anderson, Garrett Kerr, Griffin Kerr, Nicholas Kent, and David Kent, | Appeal from the Morgan Superior Court |
| *Appellants/Cross-Appellees-Respondents,* | The Honorable Peter R. Foley, Judge |
| v. | Trial Court Cause Nos. 55D01-1602-ES-000022 55D01-1603-TR-000038 55D01-1605-PL-000659 |
| Cynthia Kerr, | |
| *Appellee/Cross-Appellant-Petitioner.* | |

**Najam, Judge.**

## Statement of the Case

[1] Following the death of her father, Gary Kent ("Gary"), Cynthia Kerr ("Cynthia") filed with the probate court a verified petition to revoke the probate of Gary's will and, under a separate cause number, a complaint to revoke the probate of the will. Under a third cause number, Cynthia's brother John David Kent ("John") filed with the probate court a verified petition to docket Gary's educational trust. Following a consolidated hearing on the parties' cross-motions for summary judgment, the probate court dismissed, with prejudice, both the trust proceeding and the will contest. Specifically, the court denied Cynthia's summary judgment motion, which sought to enforce a family settlement agreement that had been executed by Gary, John, and Cynthia before Gary's death. And the court ordered the Personal Representatives, John and Gary's cousin, Kevin Kent ("Kevin"), to "proceed with administration of the probate estate pursuant to decedent's Last Will and Testament, executed on June 23, 2008." Cross-Appellant's App. at 25.

[2] John and Kevin filed a notice of appeal, but this court granted Cynthia's motion to dismiss that appeal after John and Kevin[1] failed to timely file an appellants' brief. We retained jurisdiction, however, to hear Cynthia's cross-appeal, where she presents a single dispositive issue for our review, namely, whether Indiana Code Section 29-1-9-1 permits the prospective beneficiaries of a future

---

[1] For ease of discussion, we refer to John as the sole Cross-Appellee herein.

inheritance to execute, prior to the decedent's death, a family settlement agreement to determine their anticipated rights or interests in the decedent's estate. We reverse and remand, and we instruct the trial court to enter judgment for Cynthia on her motion to enforce the parties' agreement.

## Facts and Procedural History

[3] On December 19, 2015, Gary, who was terminally ill, asked John and Cynthia to sign a settlement agreement ("the agreement") regarding "how their inheritance [would] be divided" upon his death. Cross-Appellant's App. Vol. 3 at 46. At that time, Gary had a valid will, which provided in relevant part that the majority of his personal property and his entire residuary estate would be divided equally between John and Cynthia, with a few personal items going to Gary's grandson Jacob Anderson.[2] The agreement provided as follows: Cynthia would receive Gary's coin collection; John would receive certain rental properties; John would "remove the mortgage on [real estate on Hacker Creek Road] at his sole expense"; and John and Cynthia would "subdivide" the Hacker Creek Road property "equally." *Id.* Gary, John, and Cynthia each signed the agreement, and Gary's attorney notarized it. Unbeknownst to Gary, a few days later, on December 26, John executed a written notice purporting to rescind the settlement agreement, and he notified Cynthia by certified mail.

---

[2] Gary disinherited his son Donald Kent and Vickie Beach, Gary's stepdaughter.

[4] On January 27, 2016, Gary died. On February 9, John and Kevin filed a verified petition for probate of Gary's will and issuance of letters testamentary for supervised administration in cause number 55D01-1602-ES-22 ("ES-22").[3] On March 21, Cynthia filed a verified petition to revoke the probate of Gary's will. And on May 5, Cynthia filed a complaint to revoke the probate of the will under cause number 55D01-1605-PL-659 ("PL-659"). Following a hearing on the parties' cross-motions for summary judgment, the probate court found in relevant part that the agreement, which Cynthia had asked the court to enforce,

> does not meet the legal requirements of a "settlement agreement" or "compromise" under I.C. § 29-1-9-1, *et. seq*. The Settlement Agreement was executed prior to the decedent's death. At the time the Settlement Agreement was executed, the parties to the Settlement Agreement had no vested rights in decedent's estate[], but[,] rather[,] mere expectancy interests. In addition, John David Kent rescinded the Settlement Agreement prior to the death of the decedent. Based upon the undisputed facts presented to the Court, the Settlement Agreement does not meet the requirements of I.C. § 29-1-9-1.

Cross-Appellant's App. Vol. 2 at 24. Thus, the probate court denied Cynthia's "motion to enforce" the agreement. *Id.* at 25. The court also dismissed the will contest and ordered that the Personal Representatives "promptly proceed with

---

[3] John also filed a verified petition to docket an educational trust, but that matter is not relevant to this appeal.

administration of the probate estate pursuant to decedent's Last Will and Testament, executed on June 23, 2008." *Id.* This cross-appeal ensued.

## Discussion and Decision

Cynthia contends that the trial court erred when it denied her motion for summary judgment to enforce the agreement.

> "When reviewing the grant or denial of a motion for summary judgment we stand in the shoes of the trial court." *SCI Propane, LLC v. Frederick*, 39 N.E.3d 675, 677 (Ind. 2015) (internal quotation omitted). Summary judgment is appropriate only when "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). When "the challenge to summary judgment raises questions of law, we review them de novo." *Rogers v. Martin*, 63 N.E.3d 316, 320 (Ind. 2016) (citing *Ballard v. Lewis*, 8 N.E.3d 190, 193 (Ind. 2014)). Issues of statutory construction are questions of law, which are particularly appropriate for summary resolution. *Evansville Courier & Press v. Vanderburgh Cnty. Health Dep't*, 17 N.E.3d 922, 927-28 (Ind. 2014) (citations omitted).

*City of Lawrence Util. Serv. Bd. v. Curry*, 68 N.E.3d 581, 585 (Ind. 2017).

Initially, we note that Cynthia complied with Trial Rule 9.2(A) by filing a copy of the agreement with her petition in the trial court. As such, the agreement became a part of the record and execution of the instrument was deemed established pursuant to Trial Rule 9.2(B).

In her cross-appeal, Cynthia contends that the settlement agreement is a valid contract on its face and that there is no authority for John's purported rescission

of the agreement. Cynthia presents an issue of first impression for our courts, namely, whether Indiana Code Section 29-1-9-1 permits family settlement agreements to be executed prior to a decedent's death. The statute provides as follows:

> The compromise of any contest or controversy as to:
>
>> (a) admission to probate of any instrument offered as the last will of any decedent,
>>
>> (b) the construction, validity or effect of any such instrument,
>>
>> (c) the rights or interests in the estate of the decedent of any person, whether claiming under a will or as heir,
>>
>> (d) the rights or interests of any beneficiary of any testamentary trust, or
>>
>> (e) the administration of the estate of any decedent or of any testamentary trust,
>
> whether or not there is or may be any person interested who is a minor or otherwise without legal capacity to act in person or whose present existence or whereabouts cannot be ascertained, or whether or not there is any inalienable estate or future contingent interest which may be affected by such compromise, shall, if made in accordance with the provisions of this article, be lawful and binding upon all the parties thereto, whether born or unborn, ascertained or unascertained, including such as are represented by trustees, guardians of estates and guardians ad litem; but no such compromise shall in any way impair the rights of creditors or of taxing authorities.

Ind. Code § 29-1-9-1 (2017). Indiana Code Section 29-1-9-2 provides in relevant part that the terms of the compromise shall be set forth in an agreement in writing which shall be executed by all competent persons having interests or claims which will or may be affected by the compromise. And Indiana Code Section 29-1-9-3 provides in relevant part that the court shall, if it finds that the contest or controversy is in good faith and that the effect of the agreement upon the interests of persons represented by fiduciaries is just and reasonable, make an order approving the agreement.

[8] Cynthia maintains that Section 1 does not "specif[y] a time when an agreement may or must be made, or a time before which it may not or must not be made." Cross-Appellant's Br. at 10. But John maintains that Section 1 unambiguously and plainly prohibits "pre-mortem" family settlement agreements. Cross-Appellees' Br. at 19. "As is apparent [from] the arguments of both sides we are presented with a question of statutory construction which is a matter of law and is reviewed de novo." *Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016).

> When construing a statute our primary goal is to ascertain the legislature's intent. *Adams v. State*, 960 N.E.2d 793, 798 (Ind. 2012). To discern that intent, we look first to the statutory language itself and give effect to the plain and ordinary meaning of statutory terms. *Pierce v. State*, 29 N.E.3d 1258, 1265 (Ind. 2015). "If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning." *State v. Evans*, 810 N.E.2d 335, 337 (Ind. 2004) (quotation omitted). However, if a statute admits of more than one interpretation, then it is ambiguous; and we thus resort to rules of statutory interpretation so as to give effect to the legislature's intent. *Adams*, 960 N.E.2d at 798. "For example,

we read the statute as whole, avoiding excessive reliance on a strict, literal meaning or the selective reading of individual words." *Id.* And we seek to give a practical application of the statute by construing it in a way that favors public convenience and avoids an absurdity, hardship, or injustice. *Merritt v. State*, 829 N.E.2d 472, 475 (Ind. 2005).

*Id.* at 1193-94.

[9] Indiana Code Section 29-1-9-1 does not specifically address the timing of a family settlement agreement. And while the tense of some of the words used might suggest that such an agreement may only be made "post-mortem," such a strict interpretation would undermine the statute's underlying policy of encouraging family settlement agreements and Indiana's policy which favors freedom of contract. *See* I.C. § 29-1-9-1 study commission's comment (stating that family settlement agreements "are looked upon with favor in law"). Indeed, as our Supreme Court has stated,

> because we value the freedom to contract so highly, we will not find that a contract contravenes a statute unless the language of the implicated statute is clear and unambiguous that the legislature intended that the courts not be available for either party to enforce a bargain made in violation thereof.

*Cont'l B'ball Ass'n, Inc. v. Ellenstein Enters., Inc.*, 669 N.E.2d 134, 140 (Ind. 1996). No part of the statute clearly and unambiguously prohibits pre-mortem family settlement agreements. Indeed, agreements made in accordance with the statute are lawful and binding "whether or not there is . . . any future contingent interest which may be affected," which suggests that the statute contemplates

pre-mortem agreements to determine expectancy interests in a decedent's estate. Here, the parties' respective interests under the agreement are future contingent interests, that is, interests subject to a condition subsequent, namely, Gary's death.

[10] In any event, as our Supreme Court has observed, "when interpreting an Indiana statute for the first time, it is appropriate to look to the decisions of other jurisdictions that construe identical statutory provisions." *Fratus v. Marion Cmty. Sch. Bd. of Trustees*, 749 N.E.2d 40, 44 (Ind. 2001). In support of her interpretation of the statute, Cynthia directs us to the decision of the United States Court of Appeals for the Tenth Circuit in *Salcedo-Hart v. Burningham*, No. 15-4099, 656 F. App'x 888, 892 (10th Cir. 2016), where the court interpreted Colorado's family settlement agreement statute, which is substantively similar to Indiana's statute,[4] to permit pre-mortem agreements. That court held as follows:

> It is important to first note that Salcedo-Hart has not identified even a single case, either from Colorado or any other jurisdiction, to support her position as to the validity of pre-mortem

---

[4] Colorado Revised Statute Annotated Section 15-12-912 provides as follows:

> Subject to the rights of creditors, competent successors may agree among themselves to alter the interests, shares, or amounts to which they are entitled under the will of the decedent or under the laws of intestacy in any way that they provide in a written agreement, whether or not supported by a consideration, executed by all who are affected by its provisions. The personal representative shall abide by the terms of the agreement subject to his or her obligation to administer the estate for the benefit of creditors, to pay all taxes and costs of administration, and to carry out the responsibilities of his or her office for the benefit of any successors of the decedent who are not parties. Personal representatives of decedents' estates are not required to see to the performance of trusts if the trustee thereof is another person who is willing to accept the trust. Accordingly, trustees of a testamentary trust are successors for the purposes of this section. Nothing in this section relieves trustees of any duties owed to beneficiaries of trusts.

agreements. Instead, cases addressing the issue uniformly favor the validity of pre-mortem settlements. *See, e.g.*, *Machen v. Machen*, 2011 Ark. 531, 385 S.W.3d 278, 282 (2011) ("Family-settlement agreements are favorites of the law. Courts of equity have uniformly upheld and sustained family arrangements in reference to property. . . . The motive in such cases is to preserve the peace and harmony of families." (citations omitted)); *Rector v. Tatham*, 287 Kan. 230, 196 P.3d 364, 368 (2008) ("We have found no cases disallowing an assignment of an expectancy interest from one heir to another."). These cases are entirely consistent with the general notion of freedom of contract. *See Balt. & Ohio Sw. Ry. Co. v. Voigt*, 176 U.S. 498, 505, 20 S. Ct. 385, 44 L. Ed. 560 (1900) ("[T]he right of private contract is no small part of the liberty of the citizen, and . . . the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation. . . ."); *Fox v. I-10, Ltd.*, 957 P.2d 1018, 1022 (Colo. 1998) ("Where a party enters into a contract absent fraud, duress or incapacity, the courts will not relieve that party of the consequences of the bargain simply because it may have been improvident.").

* * *

Upon careful review of the relevant authorities, this court concludes that Colorado courts would agree *with the apparently unanimous view* that pre-mortem agreements are valid and enforceable contracts. . . . [W]e decline to read into § 15-1-912 an intent by the Colorado legislature to bar all other types of family settlement agreements but for the one described therein. Thus, the district court correctly concluded the Agreement between Salcedo-Hart[ and her stepsons] was valid and enforceable.

*Id.* at 892-93 (emphasis added).

In other words, rather than concluding that Colorado's family settlement agreement statute expressly *permits* pre-mortem agreements, the Tenth Circuit Court of Appeals held that the statute *does not bar* such agreements. *Id.* Following the reasoning in *Salcedo-Hart*, we observe that Indiana courts have held that "future interests are valuable property rights which may be freely conveyed." *Kuhn v. Kuhn*, 179 Ind. App. 441, 385 N.E.2d 1196, 1200 (1979). Moreover, a "'very strong presumption of enforceability of contracts that represent the freely bargained agreement of the parties' exists reflecting 'the principle that it is in the best interest of the public not to unnecessarily restrict peoples' freedom of contract.'" *Robert's Hair Designers, Inc. v. Pearson*, 780 N.E.2d 858, 869 (Ind. Ct. App. 2002). Finally, in his treatise on wills, Professor William Herbert Page discusses family settlement agreements at length and acknowledges that some are executed "prior to the testator's death." 2 Page on the Law of Wills § 25.1 (2003). Accordingly, we hold that Indiana Code Section 29-1-9-1 does not prohibit pre-mortem family settlement agreements.

Still, John maintains that the agreement is unenforceable because it lacked consideration and because he rescinded the agreement before Gary's death. But it is well settled that an exchange of mutual promises is consideration for a contract, and the agreement expressly includes promises by both Cynthia and John. *See Hinkel v. Sataria Dist. & Packaging, Inc.*, 920 N.E.2d 766, 770 (Ind. Ct. App. 2010). In addition, Professor Page states that, where, as here, "the contract is made to give effect to the wish which [the] testator had expressed in his lifetime but which did not take the form of a new will or codicil[,] it has

been said that the desire to carry out the wishes of the testator is consideration." Page, *supra*, § 25.2. We hold that the settlement agreement is supported by adequate consideration.

[13] Further, it is well settled that a contract may be rescinded "only when a party avers that he has performed a substantial part of his obligations under a contract and that the other party refused to perform its obligations." *Van Bibber Homes Sales v. Marlow*, 778 N.E.2d 852, 858 (Ind. Ct. App. 2002), *trans. denied*. John has not averred, either to the trial court or to this court, that Cynthia refused to perform her obligations under the agreement. John contends only that he had a right to rescind the agreement because Gary was still alive when he executed the rescission. But John does not support that contention with citation to authority, and we are not aware of any such authority. In sum, the agreement is supported by adequate consideration, and John's purported rescission was a nullity. The trial court erred when it denied Cynthia's motion to enforce the agreement.

## Conclusion

[14] Cynthia moved for summary judgment on the enforceability of the settlement agreement, which presents a pure question of law on appeal. We hold that nothing in Indiana Code Section 29-1-9-1 prohibits the agreement, and it is a valid and enforceable contract. We also hold that the trial court erred when it concluded that the agreement was not supported by sufficient consideration and that John had rescinded the agreement. The trial court erred when it denied Cynthia's summary judgment motion. We reverse and remand with instructions that the trial court enter judgment for Cynthia on her motion to

enforce the agreement and for further proceedings not inconsistent with this opinion.

[15] Reversed and remanded with instructions.

Kirsch, J., and Brown, J., concur.