COLBO ET AL. *v.* BUYER, ET AL.

[No. 29,420. Filed April 30, 1956. Rehearing denied June 13, 1956.]

520

*Albert H. Cole, Jr., Russel J. Wildman* and *Albert Harvey Cole,* of Peru, for appellants.

*Louis A. Reidelbach* and *Lester L. Wilson,* of Winamac, and *Irving M. Fauvre, David L. Chambers, Jr., Michael D. Fansler* and *Michael L. Fansler,* of Indianapolis, for appellee, Jennie Colbo Buyer.

EMMERT, J.—Our decision in this case depends upon whether or not the settlor, John H. Colbo, had the power to revoke a trust agreement for 210 acres of land in Pulaski County. The trial court held that he did, and appellants' motion for a new trial questions the sufficiency of the evidence to sustain such a finding.

On October 11, 1930, John H. Colbo, hereinafter referred to as the settlor, was the owner of the real estate in controversy. He was a widower, and his only children were Edward H. Colbo, Leslie W. Colbo, Anna Swing and Jennie Colbo Buyer.

On this date the settlor and his daughter, the appellee Jennie Colbo Buyer, hereinafter referred to as the trustee, executed a trust agreement which had been prepared by the settlor's lawyer. The material parts of the trust agreement follow:

"Agreement.

This Agreement, made and entered into this 11th day of October, 1930, by and between John H. Colbo, Francesville, Pulaski County, Indiana,

Whereas, the said John H. Colbo is about to Quit Claim to Jennie Colbo Buyer by a General Quit Claim Deed, the following described real estate: [the description of 210 acres of land, more or less].

It is agreed that the said Jennie Colbo Buyer is to hold said lands in TRUST for the said John H.

Colbo during the term of his natural life and in the event of death of the said John H. Colbo, it is agreed by the parties hereto that the said Jennie Colbo Buyer, her heirs or assigns or administrators, is to and will convey or cause to be conveyed by General Quit-Claim Deed (within 60-days after the death of the said John H. Colbo) to Leslie L. Colbo of Climax, Saskatchewan, Canada; Anna Colbo Swing of Francesville, Pulaski County, Indiana, and Edward Colbo of Peru, Miami County, Indiana, each the undivided one-fourth ($\frac{1}{4}$) interest in and to the abobe [above] described farm of 210-acres, more or less, and it is futher agreed by and between the parties hereto that the said Jennie Colby Buyer, her heirs, assigns or administrator, will not sell nor offer for sale nor deed nor encumber said lands during this TRUST."

Contemporaneously with the execution of the declaration of trust the settlor executed a quit claim deed for this real estate, conveying it to the trustee, which deed was duly recorded October 14, 1930, in the Recorder's Office of Pulaski County.

During the same month the quit claim deed and the trust agreement were executed, the trustee wrote letters to her brothers Edward H. Colbo and Leslie W. Colbo informing them in general that her father had executed the deed to her, and she had executed the contract so that if anything happened to the settlor the property would be divided equally among the children. She made other statements in some of the letters about the legal effect of the instruments, and in one letter claimed that she and her husband had deeded the real estate back to the father, which deed he was keeping in a lockbox at the Winamac National Bank.

This purported deed of reconveyance was never recorded nor was its existence proved in any way except her statement in the letter. If it was a valid conveyance and the legal and equitable title to the real estate was

reconveyed to the settlor, this case should be reversed, for the settlor died intestate and the four children would inherit it equally. Therefore it becomes unnecessary to further discuss the possibility of this reconveyance.

On October 5, 1934, the settlor, the trustee and her husband executed a mortgage on the real estate which was recorded October 8, 1934, but this mortgage was paid in full and released on October 28, 1935, so no rights were asserted under it. Before the execution of this mortgage and on November 21, 1933, the settlor and the trustee and her husband executed the following contract:

> "Articles of agreement made and entered into by and between John H. Colbo, party of the first part and Jennie Colbo Buyer and Clarence C. Buyer, her husband, party of the second part.
>
> Witnesseth:—That whereas at the time of the conveyance by the party of the first part to party of the second part the following described real estate in Pulaski County and State of Indiana:—
>
> [Description of real estate.]
>
> The parties entered into a written agreement whereby party of the second part agreed that in the event of the death of first party that the party of the second part would convey a part of said real estate to the other heirs of party of the first part in consideration of a valuable consideration and by mutual agreement by the parties hereto, said contract is hereby cancelled and hereby declared null and void."

This instrument was never recorded, and the settlor's other children did not become advised of its existence until after the settlor's death.

The trust agreement fully satisfied the requirements of §56-601, Burns' 1951 Replacement, as to being evidenced by a writing signed by the party creating the trust. Other applicable sections of "An Act concerning

trusts and powers" (Chapter 113, Acts 1852) are as follows:

> "A grantor of lands reserving an absolute power of revocation shall be deemed an absolute owner, as regards creditors and purchasers." Section 56-610, Burns' 1951 Replacement.
>
> "Every power, beneficial or in trust, shall be irrevocable, unless an authority to revoke it is reserved in the instrument creating the same." Section 56-613, Burns' 1951 Replacement.

It was not necessary that the deed contain the terms of the trust. *Nesbitt* v. *Stevens* (1903), 161 Ind. 519, 522, 69 N. E. 256. The fact that there was no consideration moving from the beneficiaries to the settlor, with the exception of the trustee who was also a beneficiary, did not invalidate the trust. *Copeland, Executor* v. *Summers* (1893), 138 Ind. 219, 224, 35 N. E. 514; *Ellison* v. *Ganiard* (1906), 167 Ind. 471, 79 N. E. 450; *Crawfordsville Tr. Co.* v. *Elston Bank & Tr. Co.* (1940), 216 Ind. 596, 25 N. E. 2d 626. Nor does the fact that the trust agreement was not recorded invalidate it. *Ellison* v. *Ganiard* (1906), 167 Ind. 471, 79 N. E. 450, *supra.*

The trust agreement and the settlor's deed constituted one transaction, done under the advice of the settlor's counsel. There is nothing ambiguous in the terms of the trust, and the two instruments constituted one integrated transaction. Under such circumstances the parol evidence rule prohibits any attempt by the parties to add to, vary or change the terms of the trust.

> "Under the parol evidence rule, if the manifestation of intention of the settlor is integrated in a writing, that is, if a written instrument is adopted by him as the complete expression of his intention, extrinsic evidence, in the absence of fraud, duress,

mistake or other ground for reformation or rescission, is not admissible to contradict or vary it. On the other hand, if the meaning of the writing is uncertain or ambiguous, evidence of the circumstances is admissible to determine its interpretation. . . . It is only where there is an equitable ground for reformation or rescission, such as fraud, duress, undue influence or mistake, that such evidence is admissible." 1 Scott, Trusts §38, pp. 226, 227.

"If a declaration of trust is in writing, oral evidence to show that the terms of the trust were different from those appearing in the writing will clearly be inadmissible under the parol evidence rule." 1 Bogert, Trusts and Trustees §51, p. 373.

"Where a trust is created and the manifestation of intention of the settlor with respect to the trust is integrated in writing, that is, is adopted by the settlor as the complete expression of his intention, and there is no provision in the trust instrument as to the power of the settlor to revoke the trust, the trust is not revocable by the settlor, although he received no consideration for creating the trust." 2 Restatement, Trusts §330 (b), p. 985. See also *Brunson* v. *Henry* (1894), 140 Ind. 455, 39 N. E. 256. Nor is this court at liberty to rewrite the trust agreement any more than it is at liberty to rewrite contracts. *Downey, Rec.* v. *Mayr, Secty. of State* (1932), 95 Ind. App. 179, 182 N. E. 872.

The trust agreement was in the nature of a family settlement, which the law favors. *Hadley* v. *Kays* (1951), 121 Ind. App. 112, 128, 98 N. E. 2d 237. The provisions in favor of the beneficiaries were advantageous to them, and the law should and does presume an acceptance on their part. *Henderson* v. *McDonald* (1882), 84 Ind. 149, 153. Upon the execution of the instruments, the settlor's children became

vested with an equitable remainder in fee, and in the absence of fraud or mistake the trustee could not repudiate the trust as to any beneficiary without his consent. *Copeland, Executor* v. *Summers* (1893), 138 Ind. 219, 25 N. E. 626, *supra; Terre Haute Trust Co.* v. *Scott, Rec.* (1932), 94 Ind. App. 461, 467, 181 N. E. 369; *Rottger, Rec.* v. *First-Merchants Natl. Bank* (1933), 98 Ind. App. 139, 152, 184 N. E. 267.

The appellee, Jennie Colbo Buyer, asserts that she is the owner in fee simple of the real estate upon the authority of *Ewing* v. *Wilson* (1892), 132 Ind. 223, 31 N. E. 64, 19 L. R. A. 767. The facts in this case resulted in several appeals to this court: *Ewing* v. *Jones* (1892), 130 Ind. 247, 29 N. E. 1057; *Ewing* v. *Carson* (1892), 130 Ind. 597, 29 N. E. 1061; *Ewing* v. *Lemcke* (1892), 130 Ind. 600, 29 N. E. 1061; *Ewing* v. *Torian* (1892), 130 Ind. 600, 29 N. E. 1061; *Ewing* v. *Lutz* (1892), 131 Ind. 361, 30 N. E. 1069; *Ewing* v. *Bass* (1897), 149 Ind. 1, 48 N. E. 241. The relevant portions of the trust deed are set out in *Ewing* v. *Jones* (1892), 130 Ind. 247, 29 N. E. 1057, 15 L. R. A. 75, *supra,* and by this deed George W. Ewing, Jr. conveyed to his father, George W. Ewing, as trustee, real estate of the value of $50,000, with power in the trustee to sell and to manage the property to produce income for the use of his son for life, remainder to the legal representatives of the son. About three years later the father reconveyed to the son all the real estate not previously disposed of by him, this court noting, "In the latter conveyance it is declared to be the intention to revoke the trust, and to reinvest the creator of the trust with absolute title to the property remaining in the trustee." The trust deed contained no expressed power to revoke the trust.

In *Ewing* v. *Wilson* (1892), 132 Ind. 223, 31 N. E. 64, 19 L. R. A. 767, *supra,* this court based its opinion

on facts found by the trial court which disclosed that the son, the settlor, was 22 years of age at the time of the execution of the trust deed; that he had been in the army and had no business experience or knowledge; that he was intemperate in his habits, unmarried and easily influenced by those in whom he had confidence, and particularly under the influence and control of his father, the trustee; that the property conveyed was all the property owned by the settlor and was of the value of approximately $50,000; that the trustee was worth more than two million dollars and had a large experience in business matters, was a man of great ability and force of character, and had a commanding influence over the settlor; that the deed was executed at the suggestion of the trustee, without consideration, although $600 had been named in the deed, which was prepared at the insistence of the trustee, by his confidential bookkeepers, and no professional counsel was present or consulted on the transaction; that the deed was executed for the purpose of keeping the settlor out of the army and it was the understanding of the settlor and the trustee that the deed should be temporary only, and that upon the son's return from his visit, or as soon as he desired, the trust should be revoked. This court decided that the deed had been executed under the undue influence exerted by the trustee in violation of a fiduciary relationship, which was a fraud upon the settlor.

This court further reasoned that in the absence of proof of an intention to make the trust irrevocable, "the presumption in such a case as this would be that he [the settlor] reserved the power of revocation."

This last statement was entirely unnecessary for the decision in this case, and ignored the parol evidence rule as well as the clear provisions of the 1852 statute on trusts. Section 56-613, Burns' 1951 Replacement, *supra*.

At no place in the opinion is there any reference to this statute.

Nor is a presumption of an implied power to revoke in accord with the majority rule in this country. "By the weight of authority, however, there is no inference that the settlor intended to reserve a power of revocation and that the omission of such a reservation is due to a mistake." 3 Scott, Trusts §332, p. 1814. See also 2 Restatement, Trusts §330, clause b, p. 985, *supra;* 4 Bogert, Trusts and Trustees §993, p. 439. Since the reasoning in *Ewing* v. *Wilson* (1892), 132 Ind. 223, 31 N. E. 64, *supra,* that a power of revocation is presumed, is in direct conflict with and nullifies the clear provisions of §56-613, Burns' 1951 Replacement, *supra,* this case as to this point is specifically overruled, as well as the subsequent case of *Deckard* v. *Kleindorfer* (1940), 108 Ind. App. 485, 29 N. E. 2d 997, which followed the rule of the *Ewing* case. The case of *McCleary* v. *Chipman* (1903), 32 Ind. App. 489, 497, 68 N. E. 320, which cited and followed the above statute on trusts, was correctly decided.

Section 56-613, Burns' 1951 Replacement, excluding an implied power of revocation, does not in any way prevent an action in equity for reformation of the trust instrument for mistake, or for rescission or cancellation for fraud or other equitable causes. "On the other hand, where the omission was due to a mistake of such a character that the settlor is entitled to reformation of the instrument, the court may decree its reformation by the insertion of the intended reservation of a power to revoke." 3 Scott, Trusts §332, p. 1813. "Where the settlor is induced by fraud to create a trust, he can rescind the transaction." 3 Scott, Trusts §333.1, p. 1819. "If, however, the settlor intended to reserve a power of revocation but by mis-

take omitted to insert in the trust instrument a provision reserving such a power he can have the instrument reformed (see §332), or if he was induced to create the trust by fraud, duress, undue influence or mistake, he can have the trust set aside (see §333)." 2 Restatement, Trusts §330, clause b, p. 985. See also 4 Bogert, Trusts and Trustees §§992, 993.

When the evidence is viewed most favorably to the trustee in the appeal at bar, we fail to find anything from which a reasonable inference could be drawn that the settlor was laboring under a mistake of fact, or was defrauded, or incompetent. He acted upon the advice of his own counsel and if there is any fraud in this case it was not upon the settlor.

Even if we would assume the trustee's position on appeal is correct, and the settlor and the trustee without the consent of the other three children had the power to revoke the trust instrument, it would not aid the trustee. The trustee took whatever title was required to administer the trust. *Ewing* v. *Jones* (1892), 130 Ind. 247, 29 N. E. 1057, 15 L. R. A. 75, *supra*. Immediately upon the execution of the conveyance and the declaration of trust the trustee became vested with the legal title for the use of the settlor for life, remainder in fee to his four children, including the trustee, in equal portions.

If the contract of November 21, 1933, which purported to cancel the trust agreement, was valid as contended by the appellee trustee, it did not vest in the trustee the legal and equitable fee simple. The settlor did not execute any second deed to the trustee, and she held no merged legal and equitable fee by reason of said contract. If the revocation was valid the expressed trust was terminated, and the trustee then held her legal title for the use of the settlor.

By operation of law a resulting trust of the entire estate would have been created for the benefit of the settlor. "If there is no provision in the terms of the trust, whether express or implied, as to who shall receive the trust property on the termination of the trust, the trustee will ordinarily hold the trust property upon a resulting trust for the settlor or his successors in interest." 3 Scott, Trusts §345.3, p. 1895. "If upon the termination of the trust there is no beneficiary entitled to the trust property, the trustee, if he still holds the title to the trust property, holds it upon a resulting trust for the settlor or his estate (§§411, 430), and it is the duty of the trustee to convey the trust property to the settlor or to the person who has succeeded to his interest." 2 Restatement, Trusts §345, clause 1, p. 1075.

It was further contended by the appellee Jennie Buyer, the trustee, that the father, after the alleged revocation of the trust, orally gave the farm to her for taking care of him the rest of his life. Where a resulting trust exists, such as we are considering here, and it concerns an interest in land, the statute of frauds requires a writing to extinguish such interest. There is no evidence in this case of any written instrument by the father extinguishing his beneficial interest in any resulting trust after the assumed revocation of the expressed trust. 2 Restatement, Trusts §412(g); 3 Scott, Trusts §429, pp. 2217-8; 27 C. J. p. 202; 37 C. J. S. p. 587.

Since the settlor died intestate, the four children would have taken equally the estate which would have returned to him upon a resulting trust.

It was stipulated that the trustee never advised the other children of the agreement of November 21, 1933,

until after the death of the settlor on September 19, 1950. The statute of limitations can be of no aid to the appellee Jennie Buyer, for as between the trustee and the beneficiaries, "there can be no limitation of time, unless it is made to appear that there was a clear repudiation or denial of the trust by the trustee, and that notice or knowledge thereof was brought home to the *cestui que trust* or beneficiary, so as to require the latter to act in the premises upon a clearly asserted title upon the part of the trustee. (Citing authorities.)" *Stanley's Estate* v. *Pence* (1903), 160 Ind. 636, 643, 66 N. E. 51. See also *Hegarty* v. *Curtis* (1950), 121 Ind. App. 74, 88, 95 N. E. 2d 706.

The finding against the appellants on their complaint was contrary to law, and the finding for the trustee on her cross-complaint was not sustained by sufficient evidence and was contrary to law.

Judgment reversed and new trial ordered.

Bobbitt, C. J., Achor and Arterburn, JJ., concur.

Landis, J., not participating.

NOTE.—Reported in 134 N. E. 2d 45.