



FILED

Jun 19 2018, 4:12 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 55S01-1712-ES-00747

## In the Matter of the Supervised Estate of Gary D. Kent, Deceased;

## John David Kent and Kevin Kent, as Co-Personal Representatives of the Estate of Gary D. Kent, Deceased; Nicholas Kent; and David Kent,

*Appellants/Cross-Appellees (Respondents below),*

–v–

## Cynthia Kerr,

*Appellee/Cross-Appellant (Petitioner below).*

Argued: February 8, 2018 | Decided: June 19, 2018

Appeal from the Morgan Superior Court, Nos. 55D01-1602-ES-000022, 55D01-1603-TR-000038, and 55D01-1605-PL-000659
The Honorable Peter R. Foley, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 55A01-1612-ES-02907

**Opinion by Justice Goff**

Chief Justice Rush and Justices David and Massa concur.
Justice Slaughter dissents.

**Goff, Justice.**

A terminally-ill father tried to broker peace between two of his children by having them agree between themselves how they would divide some of his assets after his death. But the peace was short lived. Before the father died, the son tried to rescind the agreement. After the father died, the daughter sued to enforce the agreement as part of the probate process. This appeal presents the question of whether the agreement between the children, executed before their father's death, can be enforced using a chapter in the Probate Code providing for the adjudicated compromise of controversies. Because we find that the legislature intended the chapter to apply only to post-mortem agreements, the daughter cannot use this chapter of the Probate Code to enforce the agreement.

# Factual and Procedural History

In 2008, Gary D. Kent ("Gary") executed a will dividing most of his estate equally between his daughter, Cynthia Ann Kerr ("Cindy"), and one of his sons, John David Kent ("David"). On December 16, 2015, at the request of their terminally-ill father, Cindy and David signed a document entitled "Settlement Agreement" (the "Agreement") to "formalize their agreement as to how their inheritance [would] be divided." Cross-Appellant's App. Vol. 4, p. 8. The Agreement provided that Cindy and David would each receive certain pieces of personal and real property. Gary signed the Agreement indicating that it "conform[ed] to [his] wishes." About a week later, David sent a written notice to Cindy purporting to rescind the Agreement.

On January 27, 2016, Gary passed away. David and Kevin Kent, as co-personal representatives under Gary's will (the "Personal Representatives"), then petitioned the trial court to admit Gary's will to

probate.[1]  The Personal Representatives did not refer to the Agreement in their petition.

Cindy challenged the probate of Gary's will without the Agreement and, in a motion for partial summary judgment, requested that the Agreement be enforced either as a codicil to Gary's will or as a settlement agreement pursuant to Indiana Code chapter 29-1-9 (the "Compromise Chapter").  The Personal Representatives filed their own motion for summary judgment arguing that the Agreement was invalid and unenforceable.  After a hearing on the parties' motions, the trial court found that the Agreement was not a codicil to Gary's will and did not fall within the scope of the Compromise Chapter.  In reaching the latter conclusion, the trial court relied upon the fact that the parties executed the Agreement before Gary's death.  In addition, the trial court found that David rescinded the Agreement.  Accordingly, it denied Cindy's motion, dismissed the will contest, and ordered the Personal Representatives to administer Gary's estate according to his will without reference to the Agreement.

Cindy appealed the trial court's ruling.[2]  She focused on the enforceability of the Agreement under the Compromise Chapter, but also briefly mentioned general principles of contract law.  The Court of Appeals reviewed the statutory text in light of "the statute's underlying policy of encouraging family settlement agreements and Indiana's policy which favors freedom of contract[,]" and it concluded that "[n]o part of the statute clearly and unambiguously prohibits pre-mortem family settlement agreements."  *Kent v. Kerr (In re Supervised Estate of Kent)*, 82

---

[1] The Personal Representatives also sought to docket an educational trust Gary established for the benefit of some of his grandchildren.  While the parties and the trial court handled the trust proceedings alongside the probate proceedings, this appeal does not directly involve the trust.

[2] Two of Gary's grandchildren, Nicholas Kent and David Kent (John David Kent's son), initially appealed the trial court's ruling.  However, they failed to file an appellate brief.  On Cindy's motion, the Court of Appeals dismissed the grandchildren's appeal but retained jurisdiction to hear Cindy's appeal.  For all practical purposes thereafter, Cindy took on the role of the appellant, and the Personal Representatives took on the role of the appellees.

N.E.3d 326, 330–31 (Ind. Ct. App. 2017). It buttressed this conclusion with analysis of a case that reached the same conclusion in interpreting a Colorado statute with some similarities to the Compromise Chapter. *Id.* at 331–32 (citing *Salcedo-Hart v. Burningham*, 656 F. App'x 888, 892–93 (10th Cir. 2016) (unpublished) (interpreting Colo. Rev. Stat. § 15-12-912)). The Court of Appeals went on to find that there was adequate consideration for the Agreement, and David's purported rescission was a nullity because he did not show he had a right to rescind the Agreement. *Id.* at 332–33. As a result, the Court of Appeals reversed the trial court and remanded with instructions to enter judgment for Cindy and to enforce the Agreement. *Id.* at 333.

We granted the Personal Representatives' petition to transfer, thereby vacating the Court of Appeals opinion. *See* Ind. Appellate Rule 58(A).

## Standard of Review

"When reviewing the grant or denial of a motion for summary judgment we stand in the shoes of the trial court." *City of Lawrence Utils. Serv. Bd. v. Curry*, 68 N.E.3d 581, 585 (Ind. 2017) (citation omitted). Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). Although they aid our review, the findings of fact and conclusions of law a trial court may enter in support of its judgment do not bind us. *Knighten v. E. Chicago Hous. Auth.*, 45 N.E.3d 788, 791 (Ind. 2015). Issues of statutory construction present questions of law, which we review de novo. *Curry*, 68 N.E.3d at 585. This standard "remains unchanged when, as here, the parties file cross-motions for summary judgment." *In re Ind. State Fair Litig.*, 49 N.E.3d 545, 548 (Ind. 2016).

# Discussion and Decision

## I. The Compromise Chapter applies only post-mortem.

The Compromise Chapter of our Probate Code provides a method by which interested parties may compromise certain contests or controversies about a will, estate, or testamentary trust. Ind. Code ch. 29-1-9 (2004). Upon making such an agreement, any interested person can submit it for court approval. I.C. § 29-1-9-2(b). If the court finds that the agreement complies with statutory requirements (including that there is a good faith contest or controversy), it must "make an order approving the agreement and directing [its execution]." I.C. § 29-1-9-3.[3]

Section one of the Compromise Chapter, which lies at the center of this dispute, defines the specific types of contests and controversies that fall within the chapter's scope and prescribes the legal effect of their compromise. It provides:

> The compromise of any contest or controversy as to:
>     (a) admission to probate of any instrument offered as the last will of any decedent,
>     (b) the construction, validity or effect of any such instrument,
>     (c) the rights or interests in the estate of the decedent of any person, whether claiming under a will or as heir,
>     (d) the rights or interests of any beneficiary of any testamentary trust, or
>     (e) the administration of the estate of any decedent or of any testamentary trust,
> whether or not there is or may be any person interested who is a minor or otherwise without legal capacity to act in person or

---

[3] These agreements are sometimes called "family agreements" or "family settlement agreements."

whose present existence or whereabouts cannot be ascertained, or whether or not there is any inalienable estate or future contingent interest which may be affected by such compromise, shall, if made in accordance with the provisions of this article, be lawful and binding upon all the parties thereto, whether born or unborn, ascertained or unascertained, including such as are represented by trustees, guardians of estates and guardians ad litem; but no such compromise shall in any way impair the rights of creditors or of taxing authorities.

I.C. § 29-1-9-1.

This appeal is about timing: the parties disagree as to when contests or controversies regarding a will, estate, or testamentary trust may be settled using the Compromise Chapter. Cindy argues that such a contest or controversy can be settled under the chapter **either before or after** a person dies. To the contrary, the Personal Representatives assert that parties can use this statutory scheme to settle a contest or controversy **only after** the person's death.

## A. The language the legislature used in the Compromise Chapter itself shows that it applies only post-mortem.

Our primary goal in reviewing statutes is to determine and follow the legislature's intent. *Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016). "The best indicator of legislative intent is the statutory language, and where the statute is clear and unambiguous, we apply it as drafted without resort to the nuanced principles of statutory interpretation." *Crowel v. Marshall Cty. Drainage Bd.*, 971 N.E.2d 638, 646 (Ind. 2012) (internal citations omitted). However, if the statutory language is open to more than one reasonable interpretation, the statute is ambiguous, and "we resort to the rules of statutory interpretation to fulfill the legislature's intent." *Day v. State*, 57 N.E.3d 809, 813 (Ind. 2016).

We see no clear and unambiguous statement in the Compromise Chapter addressing when a contest or controversy may be compromised. The chapter could reasonably be interpreted as either allowing both pre-

and post-mortem agreements or allowing only post-mortem agreements. Therefore, it is ambiguous and open to judicial interpretation.

When interpreting a statute, "we are mindful of both what it does say and what it does not say." *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195–96 (Ind. 2016) (internal quotation marks and citations omitted). "We may not add new words to a statute which are not the expressed intent of the legislature." *Ind. Alcohol and Tobacco Comm'n v. Spirited Sales, LLC*, 79 N.E.3d 371, 376 (Ind. 2017). We give undefined terms their plain and ordinary meaning, and we may consult English language dictionaries when they are helpful in determining that meaning. *State v. Hancock*, 65 N.E.3d 585, 587 (Ind. 2016). But "[w]here the General Assembly has defined a word, this Court is bound by that definition . . . ." *Consolidation Coal Co. v. Ind. Dep't of State Revenue*, 583 N.E.2d 1199, 1201 (Ind. 1991).

In drafting the Compromise Chapter, the legislature consistently used terms indicating that a contest or controversy can be compromised only **after** a person dies. For example, in all but one of the categories of contest or controversy subject to compromise, the legislature used or referred to the term "decedent." I.C. § 29-1-9-1(a)–(c), (e). A person must die to become a decedent. I.C. § 29-1-1-3(a)(4) (Supp. 2015) ("'Decedent' means one who dies . . . ."). The legislature likewise provided that certain contests or controversies concerning the "estate of the decedent" can be resolved via the Compromise Chapter. I.C. § 29-1-9-1(c), (e) (2004). Since a person becomes a decedent only upon death, there is no "estate of the decedent" until the person dies. The statute also allows for the compromise of a contest or controversy concerning a testamentary trust. I.C. § 29-1-9-1(d)–(e). A testamentary trust is created according to the terms of a person's will when that person dies—not before. *See Testamentary Trust*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2362 (2002) (defining the term as "a trust created by the terms of a will"); *Testamentary Trust*, BLACK'S LAW DICTIONARY 1747 (10th ed. 2014) (defining the term as "[a] trust that is created by a will and takes effect when the settlor (testator) dies"). These terms evidence the legislature's intent that the Compromise Chapter apply only to post-mortem compromises.

The legislature also connected some compromises under the Compromise Chapter to specific activities that can happen only **after** a person dies. First, contests or controversies regarding admitting a will to probate can be compromised according to this chapter, I.C. § 29-1-9-1(a), but a person's will can be admitted to probate only after the person dies, *see, e.g.*, I.C. § 29-1-7-13(a) (requiring that the court find "that the testator is dead" before admitting an offered will to probate). Second, the Compromise Chapter can be used to settle a contest or controversy related to administration of a decedent's estate, I.C. § 29-1-9-1(e), but administration of the decedent's estate starts only after the person dies, *see, e.g.*, I.C. § 29-1-7-1(a) (determining venue "for administration of an estate" based on where the person died or where the person's property was at the time of death or was moved after death). Third, parties can compromise a contest or controversy as to "the rights or interests in the estate of the decedent of any person, whether claiming under a will or as heir," I.C. § 29-1-9-1(c), but a person cannot file a claim against the decedent's estate before the person dies and the estate exists. Additionally, claims against a decedent's estate must be filed with the court in which the estate is being administered, I.C. § 29-1-14-1(a), and, as just discussed, administration starts only after death. These bases for statutory compromises provide further evidence that the legislature intended the Compromise Chapter to apply only after a person's death.

By its own terms, the Controversy Chapter applies to agreements entered into after the relevant person's death. Notably absent from the text of the chapter is any language whereby it would apply to pre-mortem agreements. We cannot add new words to a statute but are bound to apply statutes as the legislature has written them. The legislature wrote the Controversy Chapter to apply only to post-mortem agreements.

## B. Finding that the Compromise Chapter applies only post-mortem complies with its stated purpose.

In addition to the statutory text, the stated purpose of the Compromise Chapter supports our conclusion that the chapter applies only post-mortem. "In determining legislative intent, we 'consider the objects and

purposes of the statute . . . .'" *Kitchell v. Franklin*, 997 N.E.2d 1020, 1026 (Ind. 2013) (quoting *Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003)). The chapter's purpose is "to set up legal machinery whereby parties having an interest in a decedent's estate may compromise any difference they may have with reference to a division of the corpus of the estate, and obtain a court order approving the compromise." I.C. Ann. § 29-1-9-1, 1953 cmt. (West 2018) (comment provided by the Indiana Probate Code Study Commission).[4] Like the statutory text itself, this statement of purpose presumes someone has died and has become a decedent with an estate. As discussed above, a person becomes a decedent only upon death, and a decedent's estate can arise only once there is a decedent—i.e., once someone dies. Moreover, for purposes of this chapter, there is no "corpus of the estate" until a person dies. The corpus of the estate is the decedent's real and personal property, *see* I.C. § 29-1-1-3(a)(9) (Supp. 2015) (defining "estate"), and this property cannot be identified and brought into the estate until the person's death, *see, e.g.*, I.C. § 29-1-12-1 (Supp. 2013) (describing the process of inventorying a decedent's probate estate); I.C. § 29-1-13-1 (Supp. 2007) (directing the personal representative to take possession of the decedent's real and personal property). This presumption of a decedent with an estate shows the legislature's intent that parties use the Compromise Chapter only after a person has died.

### C. Indiana courts have not directly addressed the issue, but our case law lends more support to the conclusion that the Compromise Chapter applies only post-mortem.

Neither this Court nor the Court of Appeals has directly addressed the question raised in this appeal. However, post-mortem compromises have been the norm in Indiana for at least 130 years, both before and after our

---

[4] Indiana Code section 29-1-1-4 provides that courts may consult the comments of the Indiana Probate Code Study Commission "to determine the underlying reasons, purposes and policies of [the Probate Code]" and "as a guide in [the Probate Code's] construction and application."

current Probate Code was enacted.[5]  *See, e.g.*, *Shuee v. Shuee*, 100 Ind. 477, 478 (1885) (describing an agreement whereby a widow purported to assign her interest in her deceased husband's estate); *Wright v. Jones*, 105 Ind. 17, 27, 4 N.E. 281, 287 (1886) (stating that "[t]he settlement made after the death of Mrs. Jones was a family settlement"); *Eissler v. Hoppel*, 158 Ind. 82, 85, 62 N.E. 692, 693 (1902) (examining an agreement resolving disputes about "the distribution of the patrimony"); *Cornet v. Guedelhoefer*, 219 Ind. 200, 209–13, 36 N.E.2d 933, 936–37 (analyzing an agreement entered to settle a will contest filed after the testator's death), *clarified on reh'g*, 219 Ind. 216, 37 N.E.2d 681 (1941); *Estate of McNicholas v. State*, 580 N.E.2d 978, 979 (Ind. Ct. App. 1991) (stating that the decedent's daughters entered into the settlement agreement, pursuant to the Compromise Chapter, after their mother died); *Yeley v. Purdom (In re Supervised Estate of Yeley)*, 959 N.E.2d 888, 890–91 (Ind. Ct. App. 2011) (reviewing a purported settlement agreement executed after the testator's death under the Compromise Chapter).

Cases that might, at first blush, appear to provide support for the idea that pre-mortem family settlement agreements could be considered "compromises" under the Compromise Chapter ultimately fail to carry weight here.  One court used the term "family agreement" in describing a pre-mortem agreement adjusting rights in real property.  *Hadley v. Kays*, 121 Ind. App. 112, 125–29, 98 N.E.2d 237, 244–45 (1951), *in banc*.  But this case was decided before the Probate Code's enactment, and it involved only an adjustment of property rights—not a compromise of the kind contemplated by the Compromise Chapter.  Thus, it is not applicable here.  Similarly, some cases have described a pre-mortem transaction as "in the nature of a family settlement agreement" and enforced it.  *See Colbo v.*

---

[5] We acknowledge that "[c]are must be taken in evaluating court decisions before 1954 in the probate field because of the extent to which they may have been influenced by principles of law repudiated or varied by the Probate Code."  *Markey v. Estate of Markey*, 38 N.E.3d 1003, 1007 (Ind. 2015) (quoting 1A John S. Grimes, *Henry's Probate Law and Practice of the State of Indiana* § 5 at 22 (7th ed. 1978)) (alteration from original).  However, the continued prevalence of post-mortem agreements shows that the principles of law supporting these agreements remain valid.

*Buyer*, 235 Ind. 518, 525, 134 N.E.2d 45, 49 (1956); *Baker v. Pyatt*,[6] 108 Ind. 61, 68, 9 N.E. 112, 116 (1886). Yet, as in *Hadley*, the agreements in *Colbo* and *Baker* did not settle a contest or controversy regarding a will, estate, or testamentary trust but just effected transfers of property. *Colbo*, 235 Ind. at 521–22, 134 N.E.2d at 47–48; *Baker*, 108 Ind. at 63–64, 9 N.E. at 114. In sum, none of these cases support Cindy's position that the Compromise Chapter can be used to enforce pre-mortem agreements.[7]

With these cases and the text and purpose of the Compromise Chapter in mind, we note that it is a fundamental legal principle that, in order to rely on a statute, the person or thing must fit within the statute's scope. This principle applies even to agreements that the law favors, like family settlement agreements. *Knepper v. Eggiman*, 177 Ind. 56, 61–62, 97 N.E. 161, 163 (1912). *See also In re Estate of Garwood*, 272 Ind. 519, 531–33, 400 N.E.2d 758, 766 (1980) (refusing to enforce a purported family settlement agreement pursuant to the Compromise Chapter because it did not meet the statutory requirements). The Compromise Chapter contemplates only post-mortem agreements. The Agreement here is a pre-mortem agreement. Thus, the Agreement does not fall within the scope of the Compromise Chapter, and Cindy cannot use that mechanism to enforce it.[8]

---

[6] We notice that this name is spelled "Pyatt" in the Indiana Reports but "Pyeatt" in the North Eastern Reporter. Because the Indiana Reports were the official reporter of this Court at the time, we follow that spelling.

[7] Likewise, Cindy's cases from other jurisdictions do not aid our analysis here because Indiana law is different. The Compromise Chapter can be used to compromise a contest or controversy that falls within one of only five specific categories. *See* I.C. § 29-1-9-1(a)–(e). This "contest or controversy" requirement is an important part of the chapter, but it is not present in all other jurisdictions. *See Machen v. Machen*, 385 S.W.3d 278, 282 (Ark. 2011) ("It is not necessary that there be a previous dispute or controversy between the members of the family before a valid family settlement may be made."); Colo. Rev. Stat. Ann. § 15-12-912 (West 2018) (omitting a "contest or controversy" requirement).

[8] To be clear, we have not closed the courthouse doors to these types of agreements. Rather, we have held, in light of the statute's text and purpose as well as our precedent, merely that parties cannot use one particular method—the Compromise Chapter—to enforce them.

## II. At this stage of the litigation, we find it inappropriate to rule on David's purported rescission or to review the Agreement under principles of general contract law.

Having answered the primary question of this appeal–whether Cindy can use the Compromise Chapter to enforce the pre-mortem Agreement–in the negative, only two separate loose ends remain to be tied up. Both the trial court and the Court of Appeals considered whether David properly rescinded the Agreement, and the Court of Appeals reviewed the adequacy of consideration supporting the Agreement. At this stage of the litigation, we find it inappropriate to rule on either issue.

Given the lack of supporting evidence at this point, any final determination as to whether David properly rescinded the Agreement is premature. As our Court of Appeals has noted, a party does not have an automatic right to unilaterally rescind a contract, and a party seeking unilateral rescission generally must show that there is a basis to support the rescission. *See, e.g.*, *Gabriel v. Windsor, Inc.*, 843 N.E.2d 29, 45 (Ind. Ct. App. 2006); *Poppe v. Jabaay*, 804 N.E.2d 789, 796 (Ind. Ct. App. 2004). Here, we are "limited to the designated evidence before the trial court," *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013) (citing T.R. 56(H)), but that evidence sheds little light on the basis for David's purported rescission. In fact, the only substantive evidence designated on the issue is the rescission notice itself. *See* Designation of Materials in Support of Motion for Summary Judgment, Cross-Appellant's App. Vol. 5, p. 41, ¶ 4. While the notice provides a three-sentence explanation for David's desire to rescind the Agreement, the notice alone—without additional evidence, explanation, or argument—is conclusory and does not establish a basis for David to unilaterally rescind the Agreement. Thus, the trial court prematurely concluded that David rescinded the Agreement.

Additionally, we decline to address the enforceability of the Agreement according to general contract law for two reasons. First, although Cindy's briefing before this Court and the Court of Appeals hints at the general enforceability of the Agreement outside the probate context, Cindy's

counsel clarified at oral argument that—at this point—she seeks enforcement of the Agreement only pursuant to the Compromise Chapter. *See* Oral Argument at 37:25–38:00 (responding to a question from the Court as to whether Cindy's argument was that the Agreement complied with the Compromise Chapter or that the Agreement was an enforceable agreement apart from the Probate Code by stating that "the agreement, as written, meets all the requirements of 29-1-9-1 save for submission to the court"). Second, even if counsel had not clarified the point, we could not address any potential argument regarding the Agreement's enforceability under general contract principles because the trial court record was not fully developed on the issue. This is not surprising since, before the trial court, Cindy sought to enforce the Agreement just as a codicil to Gary's will or as a compromise under the Compromise Chapter—not as an independent contract according to general contract law. *See* Motion for Partial Summary Judgment, Cross-Appellant's App. Vol. 5, pp. 23–24, ¶ F. Under these circumstances, we will not analyze the enforceability of the Agreement according to general principles of contract law.

## Conclusion

Today we hold that the Compromise Chapter may be used to enforce only post-mortem compromises. As a result, Cindy may not use the chapter to enforce her pre-mortem Agreement with David. We also find it inappropriate to enter judgment on David's purported rescission of the Agreement or to consider the Agreement's enforceability according to general contract law. Accordingly, we affirm the trial court's order and findings, except for its alternative finding that David rescinded the Agreement, and remand for further proceedings consistent with this opinion.

Rush, C.J., and David and Massa, JJ., concur.
Slaughter, J., dissents with separate opinion.

**Slaughter, J., dissenting.**

I respectfully dissent from the Court's conclusion that the compromise chapter of our Probate Code, see I.C. ch. 29-1-9, does not apply to family settlement agreements entered into before the decedent's death. In my view, such agreements are valid and enforceable; they are consistent with our State's longstanding policy of encouraging freedom to contract; and nothing in the compromise chapter expressly prohibits them. I agree with the Court of Appeals' thoughtful treatment of these issues and would adopt its opinion in full.

As our Court recognizes, there is "no clear and unambiguous statement in the Compromise Chapter addressing when a contest or controversy may be compromised." [Op. 6.] I agree with the Court's account of what that chapter does and does not say. But I draw a very different conclusion about what to make of this acknowledged absence of a "clear and unambiguous statement" barring ante-mortem agreements. Consistent with our precedent, we should not conclude that the chapter forecloses such agreements, especially since it does not do so in "clear and unambiguous" terms.

> [B]ecause we value the freedom to contract so highly, we will not find that a contract contravenes a statute unless the language of the implicated statute is clear and unambiguous that the legislature intended that the courts not be available for either party to enforce a bargain made in violation thereof.

*Cont'l Basketball Ass'n v. Ellenstein Enters.*, 669 N.E.2d 134, 140 (Ind. 1996) (quoted in *Matter of Estate of Kent*, 82 N.E.3d 326, 331 (Ind. Ct. App. 2017), trans. granted).

Because the compromise chapter does not expressly prohibit ante-mortem agreements, I would hold that such agreements are valid and enforceable under the chapter. On this record, that means Cindy and David, as prospective beneficiaries of their father's estate, could determine their anticipated interests in his estate even before he died and have their

agreement enforced in the probate court with jurisdiction over his estate. From the Court's contrary decision, I respectfully dissent.

ATTORNEY FOR APPELLEE/CROSS-APPELLANT
Robert M. Hamlett
Carmel, Indiana

ATTORNEY FOR APPELLANTS/CROSS-APPELLEES
Darla S. Brown
Sturgeon & Brown, PC
Bloomington, Indiana