

ATTORNEYS FOR APPELLANTS

Bart A. Karwath
Mark J. Crandley
Barnes & Thornburg LLP
Indianapolis, Indiana

Michael Allen Gillenwater
Gillenwater Law Offices
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEES

Jeffrey T. Rowes
Institute for Justice
Austin, Texas

Jeffrey H. Redfern
Institute for Justice
Arlington, Virginia

Keith E. Diggs
Institute for Justice
Tempe, Arizona

Stephen W. Voelker
Voelker Law Office
Jeffersonville, Indiana

Anthony B. Sanders
Institute for Justice
Minneapolis, Minnesota

ATTORNEYS FOR AMICI CURIAE

NOW!, INC.

J. David Agnew
Lorch Naville Ward LLC
New Albany, Indiana

THE GOLDWATER INSTITUTE

F. Bradford Johnson
Indianapolis, Indiana

Matthew R. Miller
The Scharf-Norton Center for
Constitutional Litigation at the
Goldwater Institute
Phoenix, Arizona

F & J APARTMENTS, LLC,
BROWN RENTAL PROPERTIES,
LLC, COOLEY PROPERTY
MANAGEMENT, LLC, GREGORY
DEVELOPMENT, LLC, JOSH
GREGORY, GREG YEAGER,
KENNETH T. WESTMORELAND,
JR., MICHELLE R.
WESTMORELAND, MATTHEW
SHULTZ, LISA SHULTZ, DALE
MAY, MARIA SANCHEZ, AND
MANUEL HERNANDEZ

J. David Agnew
Lorch Naville Ward LLC
New Albany, Indiana

George A. Budd, V
Schad & Schad, P.C.
New Albany, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

City of Charlestown, Indiana,
and Charlestown Board of Public
Works and Safety,

*Appellants-Defendants/Cross-Appellees,*

v.

Charlestown Pleasant Ridge
Neighborhood Association
Corporation, Joshua Craven,

September 10, 2018

Court of Appeals Case No.
10A01-1712-CT-2896

Appeal from the Clark Circuit Court

The Honorable Jason M. Mount,
Special Judge

Trial Court Cause No.
10C02-1701-CT-10

Tina Barnes, David and Ellen Keith, and Bolder Properties, LLC,

*Appellees-Plaintiffs/Cross-Appellants*

**Crone, Judge.**

# Case Summary

[1] Charlestown Pleasant Ridge Neighborhood Association Corporation, Joshua Craven, Tina Barnes, David Keith, Ellen Keith, and Bolder Properties, LLC (collectively "the Homeowners"), filed a motion for preliminary injunction against the City of Charlestown, Indiana, and the Charlestown Board of Public Works and Safety (collectively "the City") with respect to the City's practice of enforcing its Property Maintenance Code ("PMC"). In support of their motion for a preliminary injunction, the Homeowners alleged that the City enforced the PMC in a manner that violated (1) Indiana Code Chapter 36-7-9, also known as the Indiana Unsafe Building Law ("UBL"), (2) the PMC itself, (3) the United States Constitution's Equal Protection Clause, and (4) the Indiana Constitution's Privileges and Immunities Clause. As to the first claim, the trial court found that the City is not required to follow either the UBL or the PMC exclusively. Because the trial court found that the City is not required to follow the UBL, the trial court concluded that the Homeowners are unlikely to succeed on their claim that the City's manner of enforcing the PMC violates the UBL. However, the trial court also concluded that the Homeowners are likely

to succeed on their remaining claims. Accordingly, the trial court issued findings of fact and conclusions thereon ("the Appealed Order") and a separate order granting the preliminary injunction.[1]

[2] The City appeals, arguing that the trial court clearly erred in concluding that the Homeowners are likely to succeed on their claims that the City's manner of enforcing the PMC violates the PMC, the Equal Protection Clause, and the Privileges and Immunities Clause. The Homeowners cross-appeal, arguing that the trial court clearly erred in concluding that they are unlikely to succeed on their claim that the City's manner of enforcing the PMC violates the UBL.

[3] The issue raised in the Homeowners' cross-appeal is dispositive at this stage of the proceedings. As to that issue, we conclude that the trial court clearly erred in finding that the City is not required to follow the UBL. Specifically, we conclude that because the City has adopted the UBL, the City is required to act in accordance with its provisions. That does not mean that the PMC is without legal force, but rather that the City is precluded from enforcing the PMC in a manner that is inconsistent with the UBL. Because the trial court found that the City was not required to follow the UBL, the trial court did not address how the UBL impacts the City's enforcement of the PMC. Some of the provisions in the UBL are permissive, others are mandatory. Some provisions of the PMC

---

[1] Because the trial court's findings of fact and conclusions thereon set forth the terms of the preliminary injunction, thereby duplicating the trial court's separate order granting the preliminary injunction, for simplicity's sake, we generally refer to the trial court's findings of fact and conclusions thereon as the Appealed Order.

may conflict with the UBL, some PMC provisions will be compatible with the UBL, and many PMC provisions will address subject matter not covered by the UBL. Therefore, we remand for the trial court to consider how the UBL and the PMC work together in light of our conclusion that the PMC must work within the confines and strictures of the UBL, and to reconsider the Homeowners' claim that the City's enforcement of the PMC violates the UBL. Further, because the trial court decided the Homeowners' remaining three claims based on the erroneous premise that the City was not required to follow the UBL, those claims, if the Homeowners choose to pursue them, will need to be reexamined. Accordingly, we reverse the Appealed Order and the order granting the preliminary injunction and remand for further proceedings consistent with this opinion.

## Facts and Procedural History

[4] The undisputed facts show that Pleasant Ridge is a neighborhood within the City of Charlestown.[2] Appealed Order at 3 (finding #8). The City believes that Pleasant Ridge needs redevelopment. *Id*. at 4 (#13). The Association is a nonprofit corporation with approximately fifty members, all of whom are Pleasant Ridge property owners, and the Association itself owns and rents a duplex in Pleasant Ridge. *Id*. at 2 (#1). Joshua Craven, Tina Barnes, David

---

[2] In its appellants' brief, the City states that it contests many of the facts found in the Appealed Order, but they do not challenge the facts presented here. Appellants' Br. at 10 n.1. We observe that the City includes evidence in its statement of facts that is not incorporated in the trial court's findings of fact. Because our standard of review requires us to consider only the evidence most favorable to the judgment, we ignore the evidence that is irrelevant to or that does not support the trial court's findings.

Keith, and Ellen Keith are Pleasant Ridge residents and homeowners. *Id*. (#2-4). Craven is the president of the Association. Barnes is a member of the Charlestown City Council ("the City Council").[3] Bolder Properties owns four duplexes in Pleasant Ridge. *Id*. (#5).

In 2001, the City Council passed an ordinance adopting the UBL pursuant to Indiana Code Section 36-7-9-3. *Id*. at 19 (#85).[4] The UBL provides local governments with procedures to address unsafe buildings and premises but does not set forth specific building safety standards. The UBL defines an "unsafe building" in relevant part as one that is "dangerous to a person or property because of a violation of a statute or ordinance concerning building condition or maintenance." Ind. Code § 36-7-9-4. An "unsafe premises" is an unsafe building and the property it is located on. *Id*. The UBL authorizes local governments to issue orders to property owners "requiring action relative to any unsafe premises," including "repair or rehabilitation of an unsafe building to bring it into compliance with standards for building condition or maintenance required for human habitation, occupancy, or use by a statute, a rule adopted under IC 4-22-2, or an ordinance." Ind. Code § 36-7-9-5(a)(5). The UBL provides procedural protections for property owners who receive an order to repair or rehabilitate an unsafe building, such as requirements as to the

---

[3] In its appellants' brief, the City refers to the City Council as the Common Council, but we use the term used by the trial court for consistency.

[4] The City's ordinance adopting the UBL is not in the record, but the City acknowledges that it adopted the UBL in 2001. Appellants' Reply Br. at 49.

information to be included in an order, a "sufficient time" of ten to sixty days to make repairs before a fine may be imposed, a ten-day period to appeal the order, and limits on the civil penalty for noncompliance with an order to $2500 and on the accrual of such a civil penalty to not more than $1000 every ninety days. Ind. Code §§ 36-7-9-5(b)-(c), -7(a), -7.5(b)-(c).

[6] In 2008, the City Council enacted the PMC, which establishes "minimum requirements and standards" for existing residential and nonresidential structures and premises "to insure public health, safety, and welfare." Ex. Vol. 4 at 6.[5] In addition, the PMC contains provisions to enforce its safety requirements and standards, many of which address the same subject matter as the enforcement provisions in the UBL, such as provisions which govern orders and notice, the imposition of penalties, and the appeals process. *Id*. at 8-9, 11. However, many PMC enforcement provisions differ from those in the UBL. For example, the PMC allows twenty days to appeal an order rather than the ten days provided by the UBL. *Id*. at 11 (§ 111.1). Also, the PMC provides, "This ordinance does not supersede Federal or State laws, statutes or regulations, except as allowed." *Id*. at 26.

[7] In February 2016, the City Council enacted an ordinance that established an inspection program. Appealed Order at 5 (#22). In August 2016, the City began inspecting Pleasant Ridge rental properties for PMC violations and

---

[5] Although the parties cite the exhibit volumes as part of the transcript, e.g., Tr. Vol. IV, the exhibit volumes are titled "Exhibits," and therefore we cite to the exhibit volumes separately from the transcript volumes.

issuing citations. The citations imposed a separate fine for each violation, the fines were imposed as of the date the violation was discovered, and the fines began accumulating daily. *Id*. at 9 (#42). In addition, the citations did not provide any grace period to allow property owners to make repairs during which fines would not be imposed. *Id*. The citations cite both the UBL and the PMC and are confusing as to which provisions the City was intending to operate under. *Id*. at 20 (#91-92). The citations explain that an appeal of the order and fine may be made to the "hearing authority," which is the term used in the UBL. *Id*. (#91); Ex. Vol. 8 at 187, 192. The citations indicate that the appeal period is ten days, which is from the UBL, rather than twenty days as provided in the PMC. Appealed Order at 20 (#91) (citing Ind. Code § 36-7-9-7(a) and PMC § 111.1); Ex. Vol. 8 at 187, 192. During the inspection process, the City sought a search warrant to conduct an interior inspection, which was issued pursuant to the UBL. Appealed Order at 20 (#91) (citing Ind. Code § 36-7-9-16).

[8]     In January 2017, the Association filed an eleven-count complaint against the City, which was subsequently amended to add the remaining appellees. In February 2017, the Homeowners moved for a preliminary injunction, asking the trial court to enjoin the City from continuing its practice of "imposing ruinous fines that can be waived only by selling to the developer or tearing down one's own home" to force Pleasant Ridge property owners to sell to the developer so that the developer can demolish every home and build a new subdivision. Appellants' App. Vol. 2 at 127-28. The motion for preliminary

injunction was based on four of the eleven counts in the complaint; namely, that the City's manner of enforcing the PMC violated (1) the UBL, (2) the PMC itself, (3) the Equal Protection Clause, and (4) the Privileges and Immunities Clause. *Id*. at 128.

[9] In September 2017, the trial court held an evidentiary hearing on the Homeowners' motion for preliminary injunction. In December 2017, the trial court issued the Appealed Order granting a preliminary injunction. As to the Homeowners' claim that the City's manner of enforcing the PMC violates the UBL, the trial court concluded that they are unlikely to prevail on that claim because the City is not required to follow the UBL. In relevant part, the trial court found that based on the plain language of the UBL and Indiana Code Chapter 36-1-3, also known as the Home Rule Act, the City was not required to exclusively follow the UBL. Appealed Order at 18-20 (#83-92). The trial court also found that the citations are "confusing as to what provisions of the UBL and/or the PMC it is that the City intends to operate under, but the court cannot find that they are REQUIRED to do one or the other exclusively." *Id*. at 20 (#92). The trial court declined the Homeowners' request to make specific findings regarding the City's violations of the UBL, although it found that the City "made no effort to argue that it ha[d] complied with the procedural requirements" of the UBL, and that "if the UBL were mandatory, the City is not in compliance." *Id*. at 18, 20 (#82, 93).

[10] In contrast to its conclusion regarding the Homeowners' UBL claim, the trial court concluded that the Homeowners are likely to prevail on their claims that

the City's manner of enforcing the PMC violated the PMC, the Equal Protection Clause, and the Privileges and Immunities Clause. The trial court concluded that because the Homeowners are likely to succeed on the merits of a claim that the government is violating the law, a preliminary injunction should issue under Indiana's per se rule.[6] The City now brings this interlocutory appeal. The Homeowners cross-appeal the trial court's finding that the City is not required to follow the UBL and the conclusion that they are unlikely to succeed on their UBL claim.

## Discussion and Decision

[11] This is an appeal from the grant of a preliminary injunction. We observe that the trial court is required to issue special findings of fact and conclusions thereon when determining whether to grant a preliminary injunction. *Thornton-Tomasetti Eng'rs v. Indianapolis-Marion Cty. Pub. Library*, 851 N.E.2d 1269, 1277 (Ind. Ct. App. 2006); Ind. Trial Rule 52(A). We review the special findings and conclusions for clear error. Ind. Trial Rule 52(A). "Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made." *Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 912 (Ind. Ct. App. 2011). "We neither reweigh the evidence nor reassess witness credibility, but consider only

---

[6] The per se rule provides that where a government entity clearly violates a law, the public interest is so great that an injunction should issue without requiring the moving party to establish irreparable harm or greater injury. *Indiana Family & Soc. Servs. Admin. v. Walgreen Co.*, 769 N.E.2d 158, 161-62 (Ind. 2002).

the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom." *Clark's Sales & Serv., Inc. v. Smith*, 4 N.E.3d 772, 780 (Ind. Ct. App. 2014). We review questions of law de novo. *Planned Parenthood of Indiana v. Carter*, 854 N.E.2d 853, 863 (Ind. Ct. App. 2006), *trans. denied*.

[12] To obtain a preliminary injunction, the moving party typically must show by a preponderance of the evidence that

> (1) the movant's remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) the movant has at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) threatened injury to the movant outweighs the potential harm to the nonmoving party resulting from the granting of an injunction; and (4) the public interest would not be disserved.

*Apple Glen Crossing, LLC v. Trademark Retail, Inc.*, 784 N.E.2d 484, 487 (Ind. 2003). The power to issue a preliminary injunction should be used sparingly, with such relief granted only in rare instances in which the law and facts are clearly within the movant's favor. *Clark's*, 4 N.E.3d at 780.

[13] Although the trial court granted the preliminary injunction based on its conclusion that the Homeowners are likely to succeed on three of their claims, the Homeowners argue that the trial court clearly erred in concluding that they are unlikely to succeed on their claim that the City's manner of enforcing the PMC violates the UBL. Specifically, they assert that contrary to the trial court's finding, the plain language of the UBL and Home Rule Act establishes that the City is required to follow the UBL. We agree.

[14]     Resolution of this issue involves statutory interpretation, and such issues "present questions of law, which we review de novo." *Matter of Supervised Estate of Kent*, 99 N.E.3d 634, 637 (Ind. 2018). "Our primary goal in reviewing statutes is to determine and follow the legislature's intent. The best indicator of legislative intent is the statutory language, and where the statute is clear and unambiguous, we apply it as drafted without resort to the nuanced principles of statutory interpretation." *Id*. at 638 (citations and quotation marks omitted). "We give undefined terms their plain and ordinary meaning, and we may consult English language dictionaries when they are helpful in determining that meaning." *Id*. However, where a word is defined, we are bound by that definition. *Id*.

[15]     We begin by examining the UBL. Section 36-7-9-1 provides, "This chapter applies to each consolidated city and its county. This chapter also applies to any other municipality or county that adopts an ordinance under section 3 of this chapter." Section 36-7-9-3 provides, "The legislative body of a municipality or county may adopt this chapter by ordinance." By its plain terms, the UBL applies to consolidated cities, but it applies to other municipalities only if they voluntarily adopt it. Here, the parties agree that the City was not required to adopt the UBL.[7] However, the trial court found, and the City agrees, that in 2001, the City passed an ordinance adopting the UBL pursuant to Section 36-7-

---

[7] The unspoken premise here is that the City is not a consolidated city.

9-3. Having adopted the UBL, the City is now bound by its provisions. Ind. Code § 36-7-9-1.

[16] Generally, the provisions of the UBL apply to "unsafe buildings" and "unsafe premises." These terms are defined as follows:

> (a) For purposes of this chapter, a building or structure, or any part of a building or structure, that is:
>
>> (1) in an impaired structural condition that makes it unsafe to a person or property;
>>
>> (2) a fire hazard;
>>
>> (3) a hazard to the public health;
>>
>> (4) a public nuisance;
>>
>> (5) *dangerous to a person or property because of a violation of a statute or ordinance concerning building condition or maintenance*; or
>>
>> (6) vacant or blighted and not maintained in a manner that would allow human habitation, occupancy, or use under the requirements of a statute or an ordinance;
>
> is considered an unsafe building.
>
> (b) For purposes of this chapter:
>
>> (1) an unsafe building; and

> (2) the tract of real property on which the unsafe building is located;
>
> are considered unsafe premises.

Ind. Code § 36-7-9-4 (emphasis added). Significant to this case is that an unsafe building is one that is "dangerous to a person or property because of a violation of [an] ordinance concerning building condition or maintenance." *Id*. The UBL itself does not contain any specific building safety standards, but it clearly anticipates that municipalities have or will adopt ordinances with such safety standards.[8]

[17] The UBL provides local governments with procedures to enforce compliance with local building ordinances. Section 36-7-9-5(a) provides,

> The enforcement authority *may* issue an order requiring action relative to any *unsafe premises*, including … repair or rehabilitation of an unsafe building *to bring it into compliance with standards* for building condition or maintenance required for human habitation, occupancy, or use by a statute, a rule adopted under IC 4-22-2, or *an ordinance*.

---

[8] Also, the UBL addresses vacant structures and provides as follows:

> In recognition of the problems created in a community by vacant structures, the general assembly finds that vigorous and disciplined action should be taken to ensure the proper maintenance and repair of vacant structures and encourages local governmental bodies to adopt maintenance and repair standards appropriate for the community in accordance with this chapter and other statutes.

Ind. Code § 36-7-9-4.5(k). We note that when the City cites this provision in its argument, it ignores the fact that it applies to vacant structures.

(Emphases added.)[9]  By its plain terms, Section 36-7-9-5(a) governs orders that apply to "unsafe premises," which is a term specifically defined in Section 36-7-9-4.  Therefore, the orders governed by Section 36-7-9-5(a) apply to buildings that are dangerous to a person or property because of a violation of an ordinance concerning building condition or maintenance.  Ind. Code § 36-7-9-4. We note that because Section 36-7-9-5 provides that the "enforcement authority *may* issue an order," the enforcement authority is not required to issue an order. Although part of Section 36-7-9-5(a) is permissive, it also contains mandatory provisions:  "Notice of the order *must* be given under section 25 of this chapter. The ordered action *must* be reasonably related to the condition of the unsafe premises and the nature and use of nearby properties."  (Emphases added.) Accordingly, by their plain terms, these provisions of the UBL apply whenever the enforcement authority does choose to issue an order relative to any buildings that are dangerous to a person or property because of a violation of an ordinance concerning building condition or maintenance.   Local governments that have adopted the UBL are required to comply with these and other such mandatory provisions.  As previously mentioned, the UBL provides procedural protections for property owners who receive an order to repair or rehabilitate an unsafe building, such as requirements as to the information to be included in an order, a "sufficient time" of ten to sixty days to make repairs before a fine may be imposed, a ten-day period to appeal the order, and limits on the civil penalty

---

[9] The "enforcement authority" is the chief administrative officer of the department authorized to administer the UBL.  Ind. Code § 36-7-9-2.

for noncompliance with an order to $2500 and on the accrual of such a civil penalty to not more than $1000 every ninety days. Ind. Code §§ 36-7-9-5(b)-(c), -7(a), -7.5(b)-(c).

[18] In 2008, the City adopted the PMC, which sets forth specific building and property standards to insure public health, safety and welfare. Pursuant to the UBL's plain terms, a violation of the PMC safety standards that renders a building dangerous to a person or property is an unsafe building to which the UBL applies. Ind. Code § 36-7-9-4(a)(5). As discussed, the UBL does not provide specific building safety standards, so in this respect, the PMC is complementary to the UBL. However, the PMC contains its own enforcement provisions, such as those which govern notice of violations, the imposition of penalties, and the appeals process, which overlap with but differ from the UBL enforcement provisions. Ex. Vol. 4 at 8-9, 11. The City argues that pursuant to the Home Rule Act, it is not required to follow the enforcement provisions of the UBL but rather is empowered to choose whether to operate under the UBL or the PMC. We disagree.

[19] It is true, as the City asserts, that the Home Rule Act implements the "policy of the state … to grant units all the powers that they need for the effective operation of government as to local affairs." Ind. Code § 36-1-3-2. And the Home Rule Act provides that "a unit has: all powers granted it by statute; and all other powers necessary or desirable in the conduct of its affairs, even though not granted by statute." Ind. Code § 36-1-3-4(b). However, the Home Rule Act also provides that "[i]f there is a constitutional or statutory provision

requiring a specific manner for exercising a power, a unit wanting to exercise the power must do so in that manner." Ind. Code. § 36-1-3-6. Given that the City has adopted the UBL, the Home Rule Act, by its plain terms, requires the City to obey the UBL.[10] Moreover, the PMC explicitly provides, "This ordinance does not supersede Federal or State laws, statutes or regulations, except as allowed." Ex. Vol. 4 at 26.

[20] Based on the foregoing, we conclude that the City is required to comply with the UBL and that the City must enforce the PMC within the confines and strictures of the UBL. Accordingly, the trial court clearly erred in finding that the City is not required to follow the UBL. Because the trial court found that the UBL was not mandatory, the trial court did not address how the UBL impacts the City's enforcement of the PMC. Some of the provisions in the UBL are permissive, others are mandatory. Some provisions of the PMC may conflict with the UBL, some provisions will be compatible with the UBL, and many provisions will address subject matter not covered by the UBL. Therefore, we remand for the trial court to consider how the UBL and the PMC work together in light of our conclusion that the City is bound to enforce the PMC in accordance with the UBL, and to reconsider the Homeowners' claim

---

[10] The City argues that the PMC has legal force independent of the UBL because nothing in the UBL "'expressly denies' local units the power to choose their own safety regulations and means of enforcement for those requirements." Appellants' Reply Br. at 48. It is true that the UBL does not contain specific safety regulations. As discussed, the UBL anticipates that municipalities have or will adopt specific safety regulations. In addition, the UBL does not prohibit local units from choosing their own means of enforcement. However, the City chose to adopt the UBL, and therefore it is bound by the enforcement provisions of the UBL.

that the City's manner of enforcing the PMC violates the UBL. Further, because the trial court based its conclusions regarding the Homeowners' remaining claims on the erroneous premise that the City is not required to follow the UBL, those claims, if the Homeowners choose to pursue them, will need to be reexamined. As such, we need not address the issues raised by the City. We reverse the Appealed Order and the order granting the preliminary injunction and remand for further proceedings consistent with this opinion.

Reversed and remanded.

Bailey, J., and Brown, J., concur.